**Exhibit A**

**Feltman Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>TS EMPLOYMENT, INC.,<br><br>        Debtor. | Case No. 15-10243 (MG)<br><br>Chapter 11 |
| JAMES S. FELTMAN, not individually but solely as chapter 11 trustee for TS EMPLOYMENT, INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>TRI-STATE EMPLOYMENT SERVICE, INC., TRI-STATE EMPLOYMENT SERVICES, INC., BROADWAY PEO, INC., CARUSSO STAFFING CORP., STS GROUP, INC., TRISTATE SC, INC., ODYSSEY ASSOCIATES, INC., TRI-STATE NORTH CAROLINA, INC., TSE-PEO, INC., ROBERT CASSERA, JOHN MESSINA, JAMES FOLEY and JOSEPH CASSERA,<br><br>        Defendants. | Adv. Proc. No. 17-1013 (MG) |

## DECLARATION OF JAMES S. FELTMAN IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST CORPORATE DEFENDANTS

I, James S. Feltman, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1. I am the duly appointed chapter 11 trustee ("Trustee") of TS Employment, Inc. ("Debtor").

2. I have personal knowledge of and am competent to testify as to the matters set forth herein.

3. I submit this Declaration in support of the Motion for Judgment Against Corporate Defendants.

4. I am a Managing Director in Duff & Phelps's Disputes and Investigations practice. Previously, I was Senior Managing Director; National Co-Leader - Litigation and Investigative Services, at Mesirow Financial Consulting, LLC; a partner at KPMG, LLP; and a partner at Arthur Andersen LLP.

5. I am a Certified Public Accountant and Certified Fraud Examiner. I have served as a chapter 7 trustee in thousands of cases, as a chapter 11 trustee or examiner in more than three dozen cases, and have testified as an expert witness on financial and restructuring-related issues on numerous occasions.

6. On February 2, 2015, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The United States Trustee for this region appointed me as chapter 11 Trustee for TSE on February 27, 2015.

7. On January 31, 2017, I commenced this adversary proceeding by filing a Complaint under sections 544, 547, 548 and 550 of the Bankruptcy Code; sections 273, 276, 278 and 279 of the New York Debtor and Creditor Law; and Bankruptcy Rules 7064 and 7065. (Dkt. No. 1.)

8. On February 1, 2017, the Clerk of the Court issued a Summons and Notice of Pretrial Conference in an Adversary Proceedings (the "Summons"). (Dkt. No. 2.)

9. On February 1, 2017, my counsel caused the Summons and Complaint to be served upon the Corporate Defendants in accordance with Bankruptcy Rule 7004(b)(3), by mailing copies to the attention of an officer of each Default Defendant and to the registered service agent of each Corporate Defendant except TSE-PEO, Inc. (Dkt. No. 5.) On February 6, 2017, my counsel caused the Summons and Complaint to be served upon TSE-PEO, Inc. by mailing copies to the registered service agent of defendant TSE-PEO, Inc. (Dkt. No. 6.)

10. The Corporate Defendants' responses were due on March 3, 2017. After the Corporate Defendants failed to respond to the Complaint, the Clerk of this Court entered defaults against the Corporate Defendants on April 19, 2017.

11. The Corporate Defendants are not natural persons and thus they are not infants or incompetent persons, and the Servicemembers Civil Relief Act, 50 U.S.C. § 521, does not apply.

12. As of the date of this Declaration, the Corporate Defendants have not appeared in this action.

13. As part of my responsibilities as Trustee, I directed and conducted an investigation into the Debtor's and Corporate Defendants' activities and relationships with each other. My team and I also personally witnessed those business relationships as a result of my operation of TSE's business after I was appointed as chapter 11 trustee.

14. My investigative team and I also analyzed the books and records and related documents of the Debtor's and Corporate Defendants' activities. We reviewed various materials, including among other things, financial statements, electronic correspondence, invoices, bank statements, and financial books and records in connection with our investigation.

15. Upon my appointment, I determined that the Debtor maintained no premises or offices of its own, and instead "resided" at the same space occupied by Tri-State and the other Corporate Defendants at Tri-State's 160 Broadway, New York, NY offices.

16. I also determined that all of the Debtor's basic business functions were performed and controlled by Tri-State employees, most of whom worked at Tri-State's 160 Broadway, New York, NY offices.

17. The Debtor also owned no tangible assets used its business operations. Substantially all of the equipment, software and other assets used in connection with its business operations were owned by Tri-State.

18. The Debtor's records were maintained on the same computer servers utilized by the Corporate Defendants, often using shared software systems.

19. Since the inception of the Debtor's business operations, virtually every day the Debtor's cash was transferred to Tri-State accounts, where the Debtor's funds were commingled with funds of the Corporate Defendants and could be used by the Corporate Defendants and their insiders for their own purposes.

20. From 2011 through January 2014, each of the Corporate Defendants either received hundreds of millions of dollars in transfers directly from the Debtor, were the subsequent transferees of such transfers, or were entities for whose benefit the transfers were made.

21. The Debtor has been insolvent at all times since 2011.

22. The Debtor received less than reasonably equivalent value in exchange for the transfers that were directly or indirectly made to or for the benefit of the Corporate Defendants.

23. Based on the nature and amount of the transfers and other circumstances, the transfers were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

24. Effective as of the end of 2014, TSE's books and records reflected a $90,783,130 intercompany general lender balance owed by Tri-State to the Debtor on account of transfers made to or for the benefit of the Corporate Defendants. I believes that the Corporate Defendants' obligations to the Debtors actually are significantly higher, and that $90,783,130, plus pre- and post-judgment interest computed at the rate prescribed by 28 U.S.C. § 1961, fees,

and costs, is the minimum net amount of funds that were transferred to or for the benefit of the Corporate Defendants.

I swear under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct to the best of my knowledge.

Dated: New York, New York
      October 19, 2018

_____, Trustee
James S. Feltman