**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TS EMPLOYMENT, INC.,<br><br>Debtor. | **FOR PUBLICATION**<br><br>Case No. 15-10243 (MG)<br><br>Chapter 11 |
| JAMES S. FELTMAN, not individually but solely as chapter 11 trustee for TS EMPLOYMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TRI-STATE EMPLOYMENT SERVICE, INC., TRI-STATE EMPLOYMENT SERVICES, INC., BROADWAY PEO, INC., CARUSSO STAFFING CORP., STS GROUP, INC., TRISTATE SC, INC., ODYSSEY ASSOCIATES, INC., TRI-STATE NORTH CAROLINA, INC., TSE-PEO, INC., ROBERT CASSERA, JOHN MESSINA, JAMES FOLEY and JOSEPH CASSERA,<br><br>Defendants. | Adv. Pro. Case No. 17-01013 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S RENEWED MOTION**
**FOR ENTRY OF DEFAULT JUDGMENT**

*A P P E A R A N C E S:*

JENNER & BLOCK LLP
*Attorneys for Plaintiff*
919 Third Avenue
New York, NY 10022
By:    Vincent E. Lazar, Esq.
        Richard Levin, Esq.
        Carl N. Wedoff, Esq.

1

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is James S. Feltman's ("Trustee") renewed motion for entry of a default judgment against three corporate defendants—Tri-State Employment Service, Inc. ("Tri-State"), Tri-State Employment Services, Inc. ("Tri-State S"), and Broadway PEO, Inc. ("Broadway PEO," and together with Tri-State and Tri-State S, the "Default Judgment Defendants").[1] ("Renewed Motion," ECF Doc. # 54.)  In support of the Renewed Motion, the Trustee filed a second supplemental declaration ("Second Supplemental Declaration," ECF Doc. # 54-1), general ledger reports ("General Ledger Reports," Second Supplemental Declaration at 7–233), and a supplemental memorandum of law ("Supplemental Brief," ECF Doc. # 57).

The Second Supplemental Declaration and the Supplemental Brief resolve the Court's concerns about the Trustee's evidentiary burden to establish the quantum of damages and the proper method to measure the amount of fraudulent transfers.  Thus, the Court **GRANTS** the Renewed Motion and orders entry of a default judgment against in the following amounts: against Tri-State in the amount of $98,176,412; against Tri-State S in the amount of $137,030,343; and against Broadway PEO in the amount of $31,930,387.

## I.  BACKGROUND

On January 31, 2017, the Trustee filed this adversary proceeding including claims under sections 544, 547, 548 and 550 of the Bankruptcy Code, sections 273, 276, 278 and 279 of the New York Debtor and Creditor Law, and Bankruptcy Rules 7064 and 7065.  ("Complaint," ECF Doc. # 1.)  The Complaint seeks a judgment avoiding and recovering amounts improperly

---

[1]  The original default judgment motion sought entry of default judgments against eight corporate defendants while the Renewed Motion only seeks entry of default judgments against three of the original eight corporate defendants.  The amounts of the requested default judgments have also changed.  While the Court previously concluded that the original amounts sought were not properly supported by the facts and the law, the Court is satisfied that the amounts now sought are properly supported by the facts and the law.

2

transferred by TS Employment, Inc. ("Debtor") to or for the benefit of Tri-State, Tri-State S, Broadway PEO, Carusso Staffing Corp., STS Group, Inc., Tristate SC, Inc., Odyssey Associates, Inc., Tri-State North Carolina, Inc., TSE-PEO, Inc., Robert Cassera, John Messina, James Foley And Joseph Cassera (each a "Defendant," collectively, "Defendants").

On February 1, 2017, the Clerk of the Court issued a summons and notice of pretrial conference in an adversary proceeding. ("Summons," ECF Doc. # 2.) On the same day, the Summons and Complaint was served on Tri-State, Tri-State S, Broadway PEO, Carusso Staffing Corp., STS Group, Inc., Tri-State SC, Inc., Tri-State North Carolina, Inc., and TSE-PEO, Inc. (each a "Corporate Defendant," collectively, the "Corporate Defendants"). Applying Bankruptcy Rule 7004(b)(3), the Trustee mailed copies to the attention of an officer of each Corporate Defendant and to the registered service agent of each Corporate Defendant except TSE-PEO, Inc. (*See* "First Certificate of Service," ECF Doc. # 5.) On February 6, 2017, the Summons and Complaint was served by mailing copies to the attention of the registered service agent of TSE-PEO, Inc. (*See* "Second Certificate of Service," ECF Doc. # 6.) The Corporate Defendants had until March 3, 2017 to answer or otherwise respond to the Complaint, but no appearances or responses have been filed. None of the Corporate Defendants has defended this adversary proceeding. On April 19, 2017, the Clerk of this Court certified and entered defaults against the Corporate Defendants. ("Clerk's Entries of Defaults Against Corporate Defendants," ECF Doc. ## 23–30.)

On November 7, 2018, the Court heard the Trustee's motion for default judgment against all eight Corporate Defendants. ("Original Motion," ECF Doc. # 47.) At the hearing, the Court concluded that the Trustee's declaration in support of the Original Motion ("Original

3

Declaration," ECF Doc. # 47-1) did not provide sufficient evidence for the Court to ascertain the proper amount of damages.

On November 29, 2018, the Trustee filed a supplemental declaration ("Supplemental Declaration," ECF Doc. # 50), providing additional details regarding the amount of damages sought in the Original Motion. Attached to the Supplemental Declaration were six exhibits: (i) the Debtor's audited financial statements for the period ending on December 31, 2013; (ii) Kossoff's declaration; (iii) certain general ledger entries; (iv) the Debtor's internal unaudited balance sheet for the period ending November 30, 2014; (v) copies of certain journal entries; and (vi) Cassera's declaration. ("Exhibits to the Supplemental Declaration," ECF Doc. ## 50-1–6.). The Supplemental Declaration asserted that the Debtor transferred $90,783,130 to or for the benefit of the Corporate Defendants, without receiving consideration in exchange. (Supplemental Declaration. ¶ 31.) The Trustee represented that he arrived at $90,783,130 after making various adjustments and disregarding improper "eve-of-bankruptcy journal entries." (*Id.* ¶ 30.) The Trustee, however, failed to explain how he arrived at $90,783,130 after disregarding various journal entries. The Court concluded that the Trustee's Supplemental Declaration did not provide a proper rule for calculating damages. (*Id.* ¶¶ 7, 13, 30.) In addition, the Court concluded that the Trustee did not provide sufficient evidence for the Court to determine the amount of compensable damages.

On February 27, 2019, the Court issued an order finding that the Original Declaration and the Supplemental Declaration did not provide sufficient evidence to establish the amount of compensable damages. ("Order," ECF Doc. # 52, at 5 ("While the Trustee supplied a Supplemental Declaration and exhibits to support his damages calculation, the declaration relies on unauthenticated schedules and hearsay conclusions based on what others said or did.").)

4

In a letter dated March 19, 2019 ("Letter," ECF Doc. # 53), the Trustee said he was able to address the authentication and hearsay issues identified in the Order by submitting the Second Supplemental Declaration and General Ledger Reports. On May 7, 2019, the Court held a hearing on the Renewed Motion.

At the May 7, 2019 hearing, the Court found that the Second Supplemental Declaration established the foundation required to admit the General Ledger Reports into evidence as Debtor's business records. The Court questioned, however, whether the Trustee had provided legal support for relying on the net cash outflows shown in the General Ledger Reports to establish damages for the fraudulent transfers. The Court directed the Trustee to submit a Supplemental Brief addressing the proper calculation of damages for fraudulent transfer claims. The Trustee submitted the Supplemental Brief on May 21, 2019. As explained below, the Court is now satisfied that the Trustee has provided appropriate legal support for the measure of damages he seeks to apply in the Renewed Motion.

## II.    LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Bankruptcy Rule 7055, "provides a 'two-step process' for the entry of a judgment against a party that fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.* "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment." *Id.*

5

A default generally is "an admission of all well-pleaded allegations against the defaulting party." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006). However, "allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Accordingly, the trial court "must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Ascertaining damages involves two steps: (1) "determining the proper rule for calculating damages on such a claim," and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." *Credit Lyonnais*, 183 F.3d at 155.

### III. DISCUSSION

#### A. The Trustee is Entitled to Default Judgment

The Trustee seeks to avoid and recover actual and constructive fraudulent transfers under sections 544(b)(1) and 550 of the Bankruptcy Code and sections 273, 278 and 279 of the New York Debtor and Creditor Law ("NYDCL"). (*See* Complaint at 27–31.) Section 544(b)(1) of the Bankruptcy Code incorporates "applicable law," and NYDCL applies in this adversary proceeding. 11 U.S.C. § 544(b)(1). Next, the Court explains how the NYDCL, especially its burden-shifting framework, operates in the context of a default judgment.

Liability for an actual fraudulent transfer under section 276 of the NYDCL is established if a transfer is made with intent to defraud on the part of the transferor. *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005); *Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04-CV-4971 NG MDG, 2014 WL 2594340, at *3 (E.D.N.Y. June 10, 2014). A default generally is "an admission of all well-pleaded allegations against the defaulting party." *D.H. Blair*, 462 F.3d at 107. Here, the Trustee alleges that transfers were made with the actual intent to hinder or delay

6

present or future creditors of the Debtor within the meaning of section 276 of NYDCL. (*See* Complaint ¶ 157.) The Default Judgment Defendants' failure to defend this action has the effect of admitting the Trustee's allegations. Accordingly, this establishes the Default Judgment Defendants' liability for actual fraudulent transfer under section 276 of NYDCL.

Liability for a constructive fraudulent transfer under section 273 of NYDCL is established if the Trustee can demonstrate that the Default Judgment Defendants provided less than fair consideration for the subject transfers and that the Debtor was insolvent or rendered insolvent by the transfers. *Sharp*, 403 F.3d 53; *Fed. Nat'l*, 2014 WL 2594340, at *3. Section 273 of NYDCL entails a burden shifting framework that works as follows:

> The trustee has the burden of proof by a preponderance of evidence under this section. *In re Churchill Mortg. Inv. Corp.,* 256 B.R. 664, 677 (Bankr. S.D.N.Y. 2000). If the trustee meets his burden as to lack of fair consideration, then it is presumed that the transfer made the debtor insolvent. *O.P.M. Leasing,* 40 B.R. at 393. The burden then shifts to the defendant to rebut the presumption of insolvency. *Id.* If the defendant comes forward with some evidence of insolvency, the burden shifts back to the trustee. *In re Manshul Cons. Corp.,* 2000 WL 1228866, *53. If the trustee meets his burden in proving these elements, the transfer is considered a fraudulent conveyance as to creditors without taking into account the actual intent of the transferor.

*Geltzer v. Borriello (In re Borriello)*, 329 B.R. 367, 373 (Bankr. E.D.N.Y. 2005). Here, the Trustee alleges the lack of fair consideration[2] by stating that the Debtor, while insolvent, made cash transfers on a net basis to the Default Judgment Defendants or that these transfers made the Debtor insolvent. (Complaint ¶¶ 138–161.) The Default Judgment Defendants, through their inaction, admit such allegations. *D.H. Blair*, 462 F.3d at 107. As such, the Trustee sustains his

---

[2] "Fair consideration" under the NYDCL consists of "fair equivalent value" and "good faith." *See In re Vivaro Corp.*, 524 B.R. 536, 550 (Bankr. S.D.N.Y. 2015) (citing *Estate of Ruffini v. Norton Law Grp. PLLC (In re Ruffini)*, 2014 WL 714732, at *7 (Bankr. E.D.N.Y. Feb. 25, 2014)). Courts deem "fair equivalent value" interchangeable with "reasonably equivalent value," the term used in the Bankruptcy Code. *See id.* To demonstrate a lack of fair consideration is to show a lack of either fair equivalent value or good faith. The Trustee sought to show a lack of fair consideration with the net cash transfers from Debtor to the Default Judgment Defendants. (Complaint ¶¶138–161.) At the hearing, the Court ordered supplemental briefing on whether case law supports the Trustee's position that cash transfers have been used to show a lack of fair equivalent value.

7

burden, and Debtor's insolvency is presumed. The burden then shifts to the Default Judgment Defendants to rebut the presumption of insolvency. By failing to respond to the complaint, the Default Judgment Defendants did not rebut the presumption or sustain their burden of proof. Accordingly, the Default Judgment Defendants' liability for constructive fraudulent transfer under section 273 of the NYDCL has been established.

### B. The Supplemental Brief Sets Forth the Proper Damages Rule

To ascertain damages, the Court carries out the first step—"determining the proper rule for calculating damages . . . ." *Credit Lyonnais*, 183 F.3d at 155. After establishing the Default Judgment Defendants' liability for an actual or constructive fraudulent transfer under sections 273 or 276 of NYDCL, the Court calculates the amount of damages by determining "the amount of monies wrongfully received by the various transferees." *Fed. Nat'l*, 2014 WL 2594340, at *5; *cf. CAMOFI Master LDC v. Riptide Worldwide, Inc.*, No. 10 Civ. 4020(CM)(JLC), 2012 WL 6766767, at *15 (S.D.N.Y. Dec. 17, 2012) (stating that the remedy for fraudulent transfer "is to rescind, or set aside, the allegedly fraudulent transfer, and cause the transferee to return the transferred property to the transferor") (quoting *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 189 (2d Cir.2006)).

To determine the amount of damages recoverable from a transferee, courts may rely on financial records reflecting the amount of the transfers made to the transferee. For example, in *Federal National*, after the defendant defaulted, the plaintiff sought entry of a $7,813,202.73 default judgment under sections 273 and 276 of NYDCL. *Id.* at *2. After establishing the defendant's default, the court deemed true all of plaintiff's factual allegations relating to liability and drew all reasonable inferences in plaintiff's favor. *See id.* at *3 (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Specifically, because the plaintiff alleged that the

8

defendant had caused the debtor to transfer funds without fair consideration while the debtor was insolvent and that the defendant knew the transfers were intended to avoid the payment of obligation to creditors, the court held that the plaintiff established the defendant's liability under sections 273 and 276 of NYDCL. *Id.*

After establishing the defendant's fraudulent transfer liability, the court calculated damages by totaling the amounts of transfers received by various transferees. *Id.* at *5–6. These amounts were set forth in a declaration submitted by the debtor's receiver. *Id.* at *4. The declaration was based on the receiver's extensive investigation into the debtor's financial records and "attached hundreds of pages of documentary evidence setting forth the circumstances under which [the defendant] . . . caused the fraudulent transfer of millions of dollars from [the debtor] to various entities owned by himself, the other Principals, or their relatives." *Id.*

In the instant case, an award of default damages against the Default Judgment Defendants is appropriate under the framework used in *Federal National*. The Default Judgment Defendants failed to respond to the well-pleaded allegations of constructive fraudulent transfer and actual fraudulent transfer under sections 273 and 276 of the NYDCL. (*See* Complaint ¶¶ 138–161.) This results in an admission of all well-pleaded allegations against the Default Judgment Defendants. Damages for fraudulent transfers under DCL sections 273 and 276 are equal to "the amount of monies wrongfully received by the various transferees," *Fed. Nat'l*, 2014 WL 2594340, at *5, and the Trustee adduced competent evidence establishing the Default Judgment Defendants wrongfully received a total of $267,137,142. (*See* Second Supplemental Declaration ¶ 19.)

### C. The Second Supplemental Declaration Constitutes Admissible Evidence

Next, the Court carries out the second step in ascertaining the damages by "assessing plaintiff's evidence supporting the damages to be determined under this rule." *Credit Lyonnais*, 183 F.3d at 155. The Second Supplemental Declaration attaches the General Ledger Reports, attests to their authenticity, and demonstrates that they were business records under Rule 803(6). Accordingly, the Court concludes that the Debtor's net cash transfers of $137,030,343 to Tri-State S, $98,176,412 to Tri-State, and $31,930,387 to Broadway PEO as reflected in the General Ledger Reports are proper measures of damages against the Default Judgment Defendants.

Federal Rule of Evidence 901 sets forth the requirements for authentication of evidence.[3] "The authentication burden is a 'light one.'" *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513, 524 (Bankr. S.D.N.Y. 2018) (hereinafter *BLMIS*) (quoting *Curtis v. Perkins (In re Int'l Mgmt. Assocs., LLC)*, 781 F.3d 1262, 1267 (11th Cir. 2015)). "The Court is not required to hear the testimony of the document's author to demonstrate its authenticity." *Id.* (citation omitted). A proponent can satisfy the rule with "circumstantial evidence of the authenticity of the underlying documents through the testimony of a witness knowledgeable about them." *Int'l Mgmt.*, 781 F.3d at 1267 (internal citations omitted); FED. R. EVID. 901(b)(1). As the custodian of the Debtor's records, the Trustee appears knowledgeable about the Debtor's electronic general ledger system. The Trustee can testify to the authenticity of the General Ledger Reports.

---

[3] Rule 901 provides, in pertinent part: "(a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. (b) Examples. The following are examples only–not a complete list–of evidence that satisfies the requirement: (1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be." FED. R. EVID. 901(a)-(b)(1).

Rule 803(6) excepts business records from the hearsay rule.[4] Business records are generally admissible where they are created "contemporaneous with the recorded event" and "maintained in the regular conduct of a business." *In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 454–55 (Bankr. S.D.N.Y. 2007). "The business records exception has been construed generously in favor of admissibility, due to the general trustworthiness of regularly kept records and the need for this type of evidence in many cases." *BLMIS*, 592 B.R. at 528 (internal citation and quotation marks omitted). To be admissible under Rule 803(6), records "do not have to be actually created by the witness testifying to authenticate them . . . nor do they even have to be created by the entity by which the witness is employed." *In re McFadden*, 471 B.R. 136, 160 (Bankr. D.S.C. 2012). "Rule 803(6) merely requires, for records to be admissible as business records, the witness must be familiar with the company's record keeping system." *Id.* (citation omitted). Testimony that establishes a witness's familiarity "with how [records] are obtained, modified, and stored" satisfies the rule. *Id.*

The entries reflected in the General Ledger Reports are admissible business records under Rule 803(6). The entries were created contemporaneously with cash transfers to or from the Debtor and the Default Judgment Defendants. *See* FED. R. EVID. 803(6)(A); (Second Supplemental Declaration ¶ 20.) The entries were maintained in the ordinary course of the Debtor's business. *See* FED. R. EVID. 803(6)(B); (Second Supplemental Declaration ¶ 21.) Recording cash transfers was a regular practice of the Debtor, and substantially all the Debtor's

---

[4] Rule 803(6) of the Federal Rules of Evidence provides that the following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: "A record of an act, event, condition, opinion, or diagnosis if (A) the record was made at or near the time by−or from information transmitted by−someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity;' (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." FED. R. EVID. 803(6).

cash activity is documented in the General Ledger Reports. FED. R. EVID. 803(6)(C); (Second Supplemental Declaration ¶ 22.) The Trustee can competently testify to the foregoing based on his operation of the Debtor's business following his appointment and his extensive investigation into the Debtor and its prepetition business operations. *See* FED. R. EVID. 803(6)(D); (Second Supplemental Declaration ¶¶ 11–17, 23.) The Trustee's testimony demonstrates that the General Ledger Reports are admissible business records which can be considered in the calculation of default damages. *See, e.g.*, *Enron Creditors Recovery Corp.*, 376 B.R. at 458 (admitting reports derived from general ledger records); *Poulos v. City of New York*, No. 14-cv-3023, 2018 WL 3750508, at *4 (S.D.N.Y. July 13, 2018) (considering business records in calculation of default damages), *report and recommendation adopted*, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018).

## IV. CONCLUSION

As this Court previously noted, "[t]he Trustee is unquestionably entitled to the entry of a default judgment against each of [the Corporate Defendants]." (Order at 2.) The only remaining issue before the Court is the amount of damages. Because the Second Supplemental Declaration and the Supplemental Brief supplied the Court at the damages' inquest with admissible evidence and the proper rules for calculating damages, the Court **GRANTS** the Renewed Motion. The Court orders the entry of a default judgment against Tri-State in the amount of $98,176,412, against Tri-State S in the amount of $137,030,343, and against Broadway PEO in the amount of $31,930,387.

The Trustee's counsel shall prepare and submit a proposed judgment consistent with this Opinion pursuant to the Local Bankruptcy Rule 9074-1(a).

**IT IS SO ORDERED.**

Dated:   June 13, 2019
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge
