**Hearing Date and Time:** TBD
**Objection Deadline:** February 4, 2022

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| TS EMPLOYMENT, INC., | No. 15-10243 (MG) |
| Debtor. | Chapter 11 |
| JAMES S. FELTMAN, not individually but solely as chapter 11 trustee for TS Employment, Inc., | |
| Plaintiff, | |
| v. | |
| TRI-STATE EMPLOYMENT SERVICE, INC. *et al.*, | Adv. Proc. No. 17-1013 (MG) |
| Defendants, | |
| and | |
| JOFAZ TRANSPORTATION, INC. *et al.*, | |
| Third-Party Respondents. | |

## MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ON TRUSTEE'S MOTION FOR ORDER <u>DIRECTING PAYMENT OF FUNDS TO JUDGMENT CREDITOR</u>

JENNER & BLOCK LLP
Vincent E. Lazar
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

Carl N. Wedoff
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600

*Counsel for the Plaintiff-Judgment Creditor*

# TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ..................................................................................................... iii

Preliminary Statement ...................................................................................................1

Procedural History ........................................................................................................3

Undisputed Facts ...........................................................................................................6

    I.   Tri-State's Business Relationship with Respondents .........................................6

    II.  TSE's Fraud Did Not Involve Respondents.....................................................10

    III. Alleged Offsetting Liabilities to Tri-State. ....................................................10

        A.  Dishonored paychecks .............................................................................11

        B.  Tax Penalties ............................................................................................11

        C.  Fourth Quarter 2015 Tax Payments .........................................................11

        D.  Y&M Underpayments. ..............................................................................12

Legal Standard .............................................................................................................13

    I.   Summary Judgment Standard ..........................................................................13

    II.  Rule 69(a) and CPLR 5227..............................................................................14

Argument .....................................................................................................................17

    I.   The Undisputed Facts Show the Trustee is Entitled to Collect the Obligations Due
        and Owing from Respondents to Tri-State. ......................................................17

    II.  Respondents' Challenges to the Turnover Motion Lack Merit ........................18

        A.  The Turnover Motion is Proper Under CPLR 5227. .................................18

        B.  The Turnover Motion is Supported by Evidence.......................................20

        C.  Respondents' Jury Demand Does Not Interfere with the Court's Authority to
            Grant Summary Judgment. ........................................................................22

        D.  Respondents' Suggestions of Fraud Do Not Affect Their Liability. ............22

E.   The Bankruptcy Court Has Jurisdiction Over the Turnover Motion. ..........................24

Conclusion ........................................................................................................................25

## TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*In re 19 Court St. Assocs., LLC,*
    190 B.R. 983 (Bankr. S.D.N.Y. 1996) ........................................................................24

*In re A & M Fla. Properties II, LLC,*
    435 B.R. 9 (Bankr. S.D.N.Y. 2010) ..........................................................................14

*Am. Honda Fin. Corp. v. Route 57 Dev., LLC,*
    No. 713CV0260GTSATB, 2016 WL 843377 (N.D.N.Y. Mar. 1, 2016) ........................19, 21

*In re Ampal-American Israel Corp.,*
    No. 15-CV-7949 (JSR), 2016 WL 859352 (S.D.N.Y. Feb. 28, 2016) ..................................24

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)........................................................................................13, 14

*Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.,*
    No. 14 CIV. 6512 (KPF), 2017 WL 3394604 (S.D.N.Y. Aug. 8, 2017) ................................14

*Beyer v. Cty. of Nassau,*
    524 F.3d 160 (2d Cir. 2008).......................................................................................13

*Costomar Shipping Co. v. Kim-Sail, Ltd.,*
    No. 95 CIV. 3349(KTD), 1995 WL 736907 (S.D.N.Y. Dec. 12, 1995)..................................19

*CSX Transportation, Inc. v. Island Rail Terminal, Inc.,*
    879 F.3d 462 (2d Cir. 2018).......................................................................................15

*Feltman v. Kossoff & Kossoff LLP (In re TS Emp., Inc.),*
    603 B.R. 700 (Bankr. S.D.N.Y. 2019) .........................................................................23

*Feltman v. Tri-State Emp. Serv., Inc. (In re TS Emp., Inc.),*
    602 B.R. 840 (Bankr. S.D.N.Y. 2019) .....................................................................3, 23

*High Speed Capital, LLC v. Corp. Debt Advisors, LLC,*
    339 F. Supp. 3d 137 (W.D.N.Y. 2018) .........................................................................19

*In re Hypnotic Taxi LLC,*
    No. 15-43300 (CEC), 2017 WL 1207471 (Bankr. E.D.N.Y. Mar. 31, 2017) ........................22

*L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.,*
    634 F. Supp. 2d 290 (E.D.N.Y. 2009) ..........................................................................15

*Magnaleasing, Inc. v. Staten Island Mall*,
  76 F.R.D. 559 (S.D.N.Y. 1977) ........................................................19

*Meaders v. Helwaser*,
  831 F. App'x 595 (2d Cir. 2020) .....................................................14

*Mitchell v. Lyons Prof'l Servs., Inc.*,
  109 F. Supp. 3d 555 (E.D.N.Y. 2015) ..................................... passim

*Mitchell v. Lyons Prof'l Servs., Inc.*,
  727 F. Supp. 2d 120 (E.D.N.Y. 2010) .........................................16, 20

*O'Keefe v. Landow*,
  289 F.2d 465 (2d Cir. 1961)..............................................................16

*Overton v. New York State Div. of Military & Naval Affairs*,
  373 F.3d 83 (2d Cir. 2004)................................................................14

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
  639 F.3d 572 (2d Cir. 2011)..............................................................24

*Peacock v. Thomas*,
  516 U.S. 349 (1996).........................................................................25

*Port Chester Elec. Constr. Co. v. Atlas*,
  40 N.Y.2d 652 (1976) .......................................................................15

*In re Residential Capital*,
  610 B.R. 725 (Bankr. S.D.N.Y. 2019)..............................................14

*Shearson Lehman Hutton, Inc. v. Wagoner*,
  944 F.2d 114 (2d Cir. 1991)..............................................................24

*U.S. ex rel. Solera Const., Inc. v. J.A. Jones Const. Grp., LLC*,
  No. CV2003-1383 .............................................................................19

*Sub-Culture, LLC v. Rogers Invs. (In re Culture Project)*,
  571 B.R. 555 (Bankr. S.D.N.Y. 2017)..............................................24

*TD Bank, N.A. v. S. Shore Motor Grp., Inc.*,
  953 N.Y.S.2d 554 (Sup. Ct. 2012)....................................................15

*Teamsters Local 456 v. CRL Transp., Inc.*,
  No. 18-CV-2056 (KMK), 2020 WL 3619048 (S.D.N.Y. July 2, 2020)..................16

*In re The Containership Co. (TCC) A/S*,
  611 B.R. 729 (S.D.N.Y. 2019), *aff'd*, 828 F. App'x 61 (2d Cir. 2020)....................22

*Tiffany (NJ) LLC v. Dong*,
No. 11 Civ. 2183(GBD)(FM), 2013 WL 4046380 (S.D.N.Y. Aug. 9, 2013)........................15

*Trustees of 1199/SEIU Greater New York Ben. Fund v. Sieger*,
No. 07 CIV 9744 DLC, 2010 WL 3911474 (S.D.N.Y. Oct. 5, 2010) ........................... passim

*Vera v. Republic of Cuba*,
802 F.3d 242 (2d Cir. 2015)...............................................................................................15

*White Plains Plaza Realty, LLC v. Cappelli Enterprises, Inc.*,
8 N.Y.S.3d 369 (App. Div. 2015) .......................................................................................15

*Zeiler v. Deitsch*,
500 F.3d 157 (2d Cir. 2007)................................................................................................25

**Statutes**

28 U.S.C. § 1334.......................................................................................................................24

28 U.S.C. § 1961.........................................................................................................................3

11 U.S.C. § 1104(a) ....................................................................................................................3

CPLR 5001............................................................................................................................3, 25

CPLR 5004............................................................................................................................3, 25

CPLR 5201................................................................................................................................14

CPLR 5225.....................................................................................................................19, 20, 21

CPLR 5227....................................................................................................................... *passim*

**Other Authorities**

Fed. R. Bankr. P. 7056 .............................................................................................................13

Fed. R. Bankr. P. 7069 .......................................................................................................14, 16

Fed. R. Civ. P. 12(b) .................................................................................................................19

Fed. R. Civ. P. 56......................................................................................................................13

Fed. R. Civ. P. 69 ............................................................................................................ passim

Fed. R. Evid. 802(d)(2) .............................................................................................................21

Fed. R. Evid. 803(6)...................................................................................................................21

Fed. R. Evid. 807 ..........................................................................................................................21

James S. Feltman, not individually but as chapter 11 trustee ("**Trustee**") for the bankruptcy estate of TS Employment, Inc. ("**TSE**" or "**Judgment Creditor**"), plaintiff and judgment creditor in the above-captioned bankruptcy adversary proceeding, *Feltman v. Tri-State Employment Service, Inc.*, No. 17-ap-1013(MG) (Bankr. S.D.N.Y.), by and through his undersigned counsel, respectfully submits this memorandum of law in support of the Trustee's *Motion for Summary Judgment on Motion for Order Directing Payment of Funds to Judgment Creditor* (the "**Summary Judgment Motion**"), filed contemporaneously herewith, seeking summary judgment on the Trustee's *Motion For Order Directing Payment Of Funds To Judgment Creditor* (Adv. Dkt. 66)[1] (the "**Turnover Motion**"), in which the Trustee seeks to collect, under section 5227 of the New York Civil Practice Law & Rules ("**CPLR**"), amounts owing to Tri-State Employment Service, Inc. ("**Tri-State**") from (i) Jofaz Transportation, Inc. ("**Jofaz**"); (ii) Y&M Transit Corp. ("**Y&M**"); and (iii) Third Avenue Transit, Inc. ("**Third Avenue**," and together with Jofaz, and Y&M, the "**Respondents**"). In support of the Summary Judgment Motion, the Trustee respectfully states:

## PRELIMINARY STATEMENT

1.      The Trustee obtained a $98,176,412 final judgment against Tri-State. In his Turnover Motion, the Trustee seeks the recovery of $1,960,206.43 in unpaid receivables owed by Respondents to Tri-State for services Tri-State performed as Respondents' professional services organization ("**PEO**"). The undisputed facts set forth in the documents produced by Respondents and the testimony of Respondents' corporate representatives show Respondents owe Tri-State at least $1,391,569.75, which is the total amount of unpaid receivables ($1,960,206.43) minus the

---

[1] "Adv. Dkt." refers to ECF entries in the above-referenced bankruptcy adversary proceeding, No. 17-1013 (MG) (Bankr. S.D.N.Y.).

amounts either identified by Respondents' corporate representatives at their depositions as subject to a genuine dispute of material fact or as which the Trustee has conceded the validity of the offset (total of $568,636.68).

2.    There is no genuine factual dispute regarding Respondents' liability to Tri-State. Respondents have not denied that Tri-State provided PEO services to them in December 2015, they have not disputed the authenticity of the Tri-State invoices that they produced to the Trustee, and their own documents confirm that a $1,960,206.43 balance remains unpaid. Respondents defend their non-payment by alleging that they paid various obligations and incurred liabilities for which they are entitled to an offset, but have only identified $568,636.68 in potential offsets, leaving a liability of at least $1,391,569.75 not subject to a material dispute of fact.

3.    Respondents also make scattershot legal challenges to the Turnover Motion (the "**Turnover Opposition**") (Adv. Dkt. 83-1): (i) contending the Turnover Motion is procedurally improper; (ii) asserting a right to a jury trial; (iii) disputing this Court's jurisdiction; (iv) suggesting the Tri-State's involvement in a broader fraud precludes any recovery by the Trustee; and (v) arguing the Turnover Motion is unsupported by evidence. Each of these assertions lacks merit.

4.    As explained below, the Turnover Motion is procedurally proper under Fed. R. Civ. P. 69(a) and CPLR 5227; there is no right to a jury trial where there is no disputed issue of material fact; this Court has jurisdiction because the action is related to the underlying bankruptcy case and because the Bankruptcy Court has jurisdiction to enforce its own judgment; any Tri-State involvement in TSE's fraud does not excuse Respondents from paying Tri-State for the PEO services it provided; and the evidence supporting the Turnover Motion was produced by Respondents themselves—a reality they ignore.

5.      The undisputed facts of this case entitle the Trustee to collect from Respondents no less than $1,391,569.75 ($1,104,455.64 from Jofaz, $197,192.04 from Y&M, and $89,912.07 from Third Avenue), plus pre-judgment interest in accordance with CPLR 5001 and 5004,[2] and summary judgment should be granted in that amount.

## PROCEDURAL HISTORY

6.      On February 2, 2015, TSE filed a voluntary chapter 11 bankruptcy petition in this Court. On February 27, 2015, the United States Trustee for this region appointed the Trustee as the TSE's chapter 11 trustee under section 1104(a) of the Bankruptcy Code.

7.      On January 31, 2017, the Trustee commenced the above-captioned adversary proceeding against Tri-State, Tri-State Employment Services, Inc. ("**Tri-State S**"), Broadway PEO, Inc. ("**Broadway**"), Robert Cassera, John Messina, James Foley, and Joseph Cassera to recover hundreds of millions of dollars transferred by the Debtor to or for the benefit of the defendants.

8.      On June 18, 2019, the Bankruptcy Court entered a Default Judgment in favor of Plaintiff and against Tri-State in the amount of $98,176,412, against its subsidiary Tri-State S in the amount of $137,030,343, and against its subsidiary Broadway in the amount of $31,930,387, plus post-judgment interest computed at the rate prescribed by 28 U.S.C. § 1961. *Feltman v. Tri-State Emp. Serv., Inc. (In re TS Emp., Inc.)*, 602 B.R. 840 (Bankr. S.D.N.Y. 2019).

---

[2] CPLR 5001(a) provides: "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion." CPLR 5001(b) provides, in relevant part, that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed . . . ." CPLR 5004 provides that "[i]nterest shall be at the rate of nine per centum per annum[.]" Because the Turnover Motion seeks to collect payment based on Respondents' "act[s] or omissions depriving or otherwise interfering with title to, or possession or enjoyment of, property," the Trustee is entitled to 9% interest from the date each unpaid receivable became due.

9.      On October 10, 2019, the Trustee filed and served the Turnover Motion seeking payment of a total of $1,964,961.22 from Respondents, which are related entities.[3] This demand was based was on a summary of unpaid outstanding receivables (the "**Tri-State Receivables Summary**") (Ex. 1)[4] provided to the Trustee by Tri-State, acting through its principal Robert Cassera.

10.      On March 6, 2020, the Trustee served requests for production ("**RFPs**") on each Respondent. (Ex. 2.) The RFPs requested, among other things: (i) all invoices referenced in an excerpt of the Tri-State Receivables Summary; (ii) all documents showing any payments made to or for the benefit of Tri-State by Respondents on account of such invoices; (iii) all documents relating to any assertion or claim that Respondents are not obligated or required to pay the amounts specified in such invoices; and (iv) all documents showing any payments made or obligations incurred as a result of any alleged Tri-State breaches of its agreements with Respondents.

11.      On July 28, 2020, the Court held a discovery conference after the Trustee raised concerns about Respondents' discovery responses. During that conference, in response to the Trustee's request that the Respondents undertake a reasonable search of their records, Respondents' counsel stated that the Trustee had "gotten every single document that's in my client[s'] possession" (Ex. 3 (Tr. of July 28, 2020 Hr'g) at 9:2-3) (Adv. Dkt. 80). The Court directed Respondents to make its Rule 30(b)(6) witnesses available for deposition no later than August 28, 2020. (*Id.* at 23:6-10.)

---

[3] The Turnover Motion also seeks to collect receivables owed to Tri-State by School Bus By Superior ("**Superior**"), an entity that is unrelated to the Respondents. The Trustee does not seek to collect these amounts from the Respondents and the Trustee does not seek summary judgment on his claims against Superior in the Summary Judgment Motion.

[4] Unless otherwise noted, all "Ex." references refer to exhibits attached to the Declaration of Carl N. Wedoff, filed contemporaneously herewith.

12.     On August 11, 2020, the Trustee conducted a remote deposition of Rule 30(b)(6) witness Joseph Fazzia, Respondents' President (Ex. 4), and on August 25, 2020, the Trustee conducted a remote deposition of a second Rule 30(b)(6) witness, Al Rizzo, Respondents' Office Manager and Comptroller. (Ex. 5.)

13.     Following the depositions, on September 4, 2020 the Trustee requested another discovery conference and the entry of an order requiring the Respondents to produce the Quickbooks financial records and bank statements referenced during Mr. Rizzo's Rule 30(b)(6) deposition, which had not been produced in discovery ("**Discovery Letter**") (Ex. 6). The Court held a September 10, 2020 discovery conference, at which Respondents agreed to provide Quickbooks records by September 15, 2020 in addition to bank statements by September 30, 2020.

14.     Between September 15, 2020 and December 7, 2020, Respondents produced 6,634 pages of additional documents in four document productions. In an email accompanying the December 7, 2020 production, Respondents' counsel stated that "[a]fter a diligent search," Respondents had "no additional documents to provide." (Ex. 7.)

15.     On October 7, 2020, Respondents filed the Turnover Opposition, and raised four arguments: (i) the Turnover Motion is not properly brought under CPLR 5227 because Respondents dispute the debt; (ii) the Bankruptcy Court may not consider the Turnover Motion because the Respondents assert a right to a jury trial; (iii) the Bankruptcy Court lacks jurisdiction over the Turnover Motion; and (iv) the Turnover Motion should be denied for lack of evidentiary support.

16.     On November 2, 2020, Respondents moved to withdraw the reference to this Court (the "**Withdrawal Motion**") (Adv. Dkt. 87). The Withdrawal Motion substantially repeated each

of the arguments from the Turnover Opposition, and added a fifth argument that the Trustee lacks

standing to bring the Turnover Motion.

17.    On November 2, 2021, District Judge John P. Cronan denied the Withdrawal

Motion without prejudice. *Feltman v. Tri-State Emp. Serv.*, 20-cv-09558-JPC (S.D.N.Y.) (Dkt. 9).

18.    On December 16, 2021, this Court held a pre-motion conference and authorized the

parties to submit cross-motions for summary judgment.

## UNDISPUTED FACTS

**I.    Tri-State's Business Relationship with Respondents**

19.    Tri-State provided PEO services for Respondents. During the course of their

business relationship, Respondents would report employee hours and wages to Tri-State; Tri-State

would remit payroll taxes and insurance payments to the relevant authorities and prepare

paychecks for distribution to Respondents employees; and Respondents would reimburse Tri-State

for these charges in addition to an administrative fee for Tri-State's services. (Ex. 4 (Fazzia Tr.) at

26:14-23.)

20.    Tri-State began providing PEO services to JoFaz no later than 2004, to Third

Avenue no later than 2010, and to Y&M no later than 2013. (*Id.* at 22:10-23:12.)

21.    Tri-State continued to provide PEO services to each Respondent through the end of

December 2015, at or about which time Tri-State ceased to operate. (Ex. 5 (Rizzo Tr.) at 19:2-6.)

22.    In response to discovery requests, Respondents produced 10 sets of their business

records (Ex. 8-1 to 8-10) consisting of copies of Tri-State invoices (the "**Tri-State Invoices**"), a

copy of a check stub and handwritten notations. The records related to services rendered by Tri-

State from November 30, 2015 through December 27, 2015, for which the relevant Tri-State

invoices aggregated $2,723,670.57, and are summarized in paragraph 24 below.

23.     As summarized in the below table, the sets of records produced by Respondents show $2,723,670.57 in obligations reflected in the Tri-State Invoices, and that Respondents satisfied $763,464.14 through partial payment of certain December 2015 invoices on or about January 25, 2016, leaving an aggregate unpaid balance of $1,960,206.43 (the "**Unpaid Invoice Amount**") ($1,193,603.58 owed by Jofaz, $675,980.91 owed by Y&M, and $90,621.94 owed by Third Avenue):

| Customer | Invoice Date | Bates | Ex.# | Invoice Amt. | Check # | Replacement Check # | Replacement Check Amt. | Balance Due |
|---|---|---|---|---|---|---|---|---|
| JoFaz | 12/11/15 | 0057 | 8-1 | 301,068.98 | 12817 | | | 301,068.98 |
| JoFaz | 12/11/15 | 0058 | 8-1 | 42,843.50 | 12817 | | | 42,843.50 |
| JoFaz | 12/11/15 | 0059 | 8-1 | 19,626.55 | 12817 | | | 19,626.55 |
| JoFaz | 12/11/15 | 0060 | 8-1 | 64,552.85 | 12817 | | | 64,552.85 |
| JoFaz | 12/18/15 | 0062 | 8-2 | 285,901.75 | 12836 | 12933 | 277,081.65 | 8,820.10 |
| JoFaz | 12/18/15 | 0063 | 8-2 | 29,403.73 | 12836 | 12933 | 28,560.71 | 843.02 |
| JoFaz | 12/18/15 | 0064 | 8-2 | 21,360.15 | 12836 | 12933 | 20,745.29 | 614.86 |
| JoFaz | 12/18/15 | 0065 | 8-2 | 63,141.61 | 12836 | 12933 | 61,414.92 | 1,726.69 |
| JoFaz | 12/18/15 | 0066 | 8-2 | 91.31 | 12836 | 12933 | 88.89 | 2.42 |
| JoFaz | 12/23/15 | 0140 | 8-3 | 299,782.04 | 12858 | | | 299,782.04 |
| JoFaz | 12/23/15 | 0141 | 8-3 | 32,132.02 | 12858 | | | 32,132.02 |
| JoFaz | 12/18/15 | 0142 | 8-3 | 586.93 | 12858 | | | 586.93 |
| JoFaz | 12/23/15 | 0143 | 8-3 | 23,065.69 | 12858 | | | 23,065.69 |
| JoFaz | 12/23/15 | 0144 | 8-3 | 63,672.47 | 12840 | | | 63,672.47 |
| JoFaz | 12/30/15 | 0130 | 8-4 | 256,558.40 | 12840 | | | 256,558.40 |
| JoFaz | 12/30/15 | 0131 | 8-4 | 24,199.20 | 12840 | | | 24,199.20 |
| JoFaz | 12/30/15 | 0132 | 8-4 | 48,152.04 | 12840 | | | 48,152.04 |
| JoFaz | 12/30/15 | 0133 | 8-4 | 5,355.82 | 12840 | | | 5,355.82 |
| 3rd Ave. | 12/18/15 | 0073 | 8-5 | 32,232.75 | 11038 | 11059 | 31,375.85 | 856.90 |
| 3rd Ave. | 12/23/15 | 0149 | 8-6 | 58,314.07 | 11038 | | | 58,314.07 |
| 3rd Ave. | 12/31/15 | 0138 | 8-7 | 31,450.97 | 11040 | | | 31,450.97 |
| Y&M | 12/18/15 | 0069 | 8-8 | 229,381.42 | 3447 | 3558 | 223,634.73 | 5,746.69 |
| Y&M | 12/18/15 | 0070 | 8-8 | 123,598.34 | 3447 | 3558 | 120,562.10 | 3,036.24 |
| Y&M | 12/23/15 | 0146 | 8-9 | 237,036.84 | 3451 | | | 237,036.84 |
| Y&M | 12/23/15 | 0147 | 8-9 | 129,069.94 | 3558 | | | 129,069.94 |
| Y&M | 12/30/15 | 0135 | 8-10 | 205,597.24 | 3483 | | | 205,597.24 |

| Y&M | 12/30/15 | 0136 | 8-10 | 95,493.96 | 3451 | | | 95,493.96 |
|---|---|---|---|---|---|---|---|---|
| | | | **Total:** | $2,723,670.57 | | | ($763,464.14) | **$1,960,206.43** |

24.     As indicated above, some of the business records produced by Respondents include hand-written notations. Only one check stub (Ex. 8-2 at 000068, related to invoices dated December 18, 2015 for which there is a replacement check stub, Ex. 8-2 at 000067), includes a "paid" notation;[5] the other check stubs either indicate that the check was being "held" (*see* Ex. 8-1 at 000061) or are blank.

25.     The payment history reflected in the above table and Respondents' documents are entirely consistent with the unpaid invoice information provided by Tri-State in the Tri-State Receivables Summary. *See* Ex. 1 at 1-3.[6]

26.     The testimony of Respondents' president and first Rule 30(b)(6) witness confirmed that only one set of invoices was paid, and explained why Respondents did not paid the other invoices. That witness, Joseph Fazzia, testified that around the time Tri-State informed Respondents in December 2015 that it would cease acting as Respondents' PEO, Mr. Fazzia directed Respondents to withhold all payments to Tri-State.[7]

27.     Specifically, Mr. Fazzia "gave the order not to pay . . . or to stop payment on checks because [he] was getting hit with tax bills," (Ex. 4 (Fazzia Tr.) at 35:7-9), and had "give[n] the directive to stop payments because there were other bills coming in that [Tri-State was] negligent

---

[5] The Respondents' accounting records, described below, indicate that this check was issued on January 25, 2016.

[6] The Tri-State Receivables Summary reflects a slightly larger amount owing—$1,964,961.22 as opposed to the $1,960,206.43 Unpaid Invoice Amount—on account of 24 small entries for which Respondents did not produce invoices or other documentation, and which included several entries in negative amounts. The Trustee will not be pursuing any claims with respect to this additional $4,754.79.

[7] Typically, Tri-State delivered employee paychecks and invoices to Respondents on a weekly basis, at which time Respondents provided Tri-State with physical checks in the amount of the invoices. Tri-State held the checks for a period of time before depositing them, which permitted Respondents to stop payment on the Tri-State Invoices. (Ex. 5 (Rizzo Tr.) at 38:11-39:20; Ex. 4 (Fazzia Tr.) at 41:12-42:2.)

on." (*Id.* at 39:23-25.) Mr. Fazzia testified that he "instructed [Respondents' office manager] Al [Rizzo] to stop payments on [checks delivered to Tri-State] because of the bills that I was getting sent to me from the federal government, the state government . . . from other agencies" and "it was upon my instruction to stop payments." (*Id.* at 41:16-21.).

28.    Mr. Fazzia testified that Tri-State thereafter refused to release W-2 tax forms for Respondents' employees if the Tri-State invoices were not paid.  Mr. Fazzia testified that he directed Respondents to pay only one set of invoices in order to secure the release of the W-2 forms, stating, "Make one payment. That's it." (*Id.* at 43:16-20.)

29.    Subsequent to Mr. Fazzia's testimony, Respondents' second Rule 30(b)(6) witness Al Rizzo attempted to contradict Mr. Fazzia's admissions, and asserted under oath (and without any documentary support) that notwithstanding Mr. Fazzia's testimony all of the Tri-State invoices had been paid. (Ex. 5 (Rizzo Tr.) at 44:14-19; 46:18-21.) However, upon further questioning Mr. Rizzo testified that Respondents maintained Quickbooks accounting records (*id.* at 18:14-19:6), that Mr. Rizzo had reviewed the Quickbooks records in advance of his deposition, and that those records were the basis for his statement concerning payment *(id.* at 27:15-23, 48:20-49:4; 50:21-51:6; 60:6-9).  Mr. Rizzo further indicated that the Quickbooks records were reconciled to bank statements and would show if invoices had been paid. (*Id.* at 48:24-49:20; 73:20-74:13.)

30.    On September 4, 2020, Trustee's counsel submitted the Discovery Letter to the Court, requesting production of the Quickbooks records and bank statements that had not been produced, notwithstanding counsel's July 28, 2020 representation to the Court that the Trustee had "gotten every single document that's in my client[s'] possession." (Ex. 3 at 9:2-3.)

31.    When Respondents finally produced the Quickbooks accounting records, they showed that Mr. Rizzo's testimony had not been truthful, and confirmed that the initial sets of

9

business records produced by the Respondents; the Tri-State Receivables Summary; and Mr.
Fazzia's testimony that only one set of payments had been made (all as reflected in the table in
paragraph 24 above), were in fact accurate.[8]

## II.    TSE's Fraud Did Not Involve Respondents.

32.    Respondents have suggested that the Trustee is not entitled to recover from
Respondents because Tri-State was involved in fraud. *See* Turnover Opp. 15 (stating that Tri-
State's "ordinary course of business was massive fraud"); (Ex. 3 (Tr. July 28, 2020 Hr'g) at 13:4-
7 ("This was a massive fraud that the trustee is asking us—asking my clients to, essentially,
unweave for him."); Withdrawal Motion 16-17 (arguing that the Trustee is not pursuing the
Judgment Creditor's claim, but is instead pursuing a claim of a third party); *id.* at 18 (arguing
Trustee lacks standing to bring claim under *in pari delicto* doctrine). However, Respondents have
failed to identify any TSE fraud directed at or otherwise implicating Respondents, and as detailed
below, any legal challenge based on TSE's fraud is meritless.

## III.    Alleged Offsetting Liabilities to Tri-State.

33.    Respondents do not dispute that the Unpaid Invoice Amount has not been paid.
Respondents have produced documents reflecting payments made or obligations incurred by the
Respondents that they contend were Tri-State's responsibility or fault, and on that basis contend
that they should be relieved of *all* obligations to Tri-State. However, Respondents have only
identified $568,636.68 in potential offsets, detailed below, leaving a liability of at least
$1,391,569.75 not subject to a material dispute of fact.

---

[8] *See* Ex. 9-1 (JoFaz general ledger entry) at 10, Ex. 9-2 (Third Avenue general ledger entry) at 2, and Ex. 9-3 (Y&M
general ledger entry) at 5, reflecting payment of certain December 2015 invoices in January 2021 (highlighting in blue
added for Court's convenience); *see also* Ex. 9-1 (JoFaz general ledger entry) at 10, Ex. 9-2 (Third Avenue general
ledger entry) at 9-11, and Ex. 9-3 (Y&M general ledger entry) at 5, reflecting that original check nos. 12817, 12840,
12858, 12933, 11038, 11040, 11059, 3483, 3451 and 3558 had each been "voided" and the related accounting entries
reflecting payment reversed (highlighting in yellow added for Court's convenience).

A. Dishonored paychecks

34.    Respondents produced copies of checks showing (and their Rule 30(b)(6) witnesses testified) that Respondents reimbursed sixteen employees who had been issued payroll checks by Tri-State, but whose checks were not presented until months later and were dishonored because the Tri-State bank account had been closed. (Ex. 10; Ex. 5 (Rizzo Tr.) at 141:14-143:8.) The payments total $12,641.30 ($8,803.39 by JoFaz, $3,737.26 by Y&M, and $100.65 by Third Avenue). The Trustee does not contest the validity of these claimed offsets.

B. Tax Penalties

35.    Respondents produced documentation showing (and their Rule 30(b)(6) witnesses testified) that interest and tax penalties were incurred because of Tri-State's failure to timely remit certain tax payments (the "**Tax Penalties**"). (Ex. 11; Ex. 4 (Fazzia Tr.) at 49:12-50:12; 55:20-57:11, 58:12-59:13; Ex. 5 (Rizzo Tr.) at 129:17-131:14.) The documents produced by Respondents show that the Tax Penalties total $44,313.17 ($44,150.44 for Y&M, and $162.73 for Third Avenue). The Trustee does not contest the validity of claimed offsets as set forth below:

| Respondent | Bates # | Basis | Amount |
|---|---|---|---|
| Y&M | 102-108 | Interest | $34,058.41 |
| Y&M | 98-99 | Levy | $2,362.14 |
| Y&M | 98-99 | Processing fee | $110.00 |
| Third Avenue | 122 | Levy | $162.73 |
| Y&M | 85-90 | Penalties | $7,619.89 |
| | | **Total:** | **$44,313.17** |

C. Fourth Quarter 2015 Tax Payments

36.    Respondents produced documentation showing each Respondent paid its New York State unemployment insurance obligations for the fourth quarter of 2015 directly to the New York State taxing authorities rather than through Tri-State (the "**4Q2015 Tax Payments**"), and testified that they are entitle to an offset. (Ex. 12; Ex. 5 (Rizzo Tr.) at 113:22-116-8.) The 4Q2015

Tax Payments total $122,140.29. The Tri-State Invoices show Tri-State was collecting virtually

no unemployment tax from Respondents in December 2015 (*see generally* Ex. 8-1 to 8-10), raising

the inference that Tri-State never billed Respondents for these obligations from Respondents in

the first instance and that therefore there should be no offset for the 4Q2015 Tax Payments.

Accordingly, the Trustee does not agree that 4Q2015 Tax Payments should offset Respondents'

obligations to Tri-State and reserves all rights with respect to the 4Q2015 Tax Payments, but

acknowledges a genuine issue of material fact as to Respondents' liability for the amounts set forth

below.

| Respondent | Bates | Check # | Amount |
|---|---|---|---|
| JoFaz | 109-111 | 12959 | 80,334.55 |
| Third Avenue | 115-117 | 11063 | 446.49 |
| Y&M | 112-114 | 3580 | 41,359.25 |
| | | Total: | **$122,140.29** |

D.  Y&M Underpayments.

37.    Y&M produced to the Trustee an underpayment notice from the New York State

Department of Labor dated February 5, 2016 and a printout dated February 23, 2016 indicating

Y&M had underpaid its quarterly unemployment insurance contributions beginning in the third

quarter of 2013 through the fourth quarter of 2015 in the aggregate amount of $389,541.92 (the

"**Y&M Underpayments**"). (Ex. 13 at 000051-000055; Adv. Dkt. 83-5.) Respondents produced

evidence showing they satisfied the Y&M Underpayments in full, and claim an offset (Ex. 13

(check stub) at 000056; Ex. 14 (canceled check).)

38.    Plaintiff does not agree that the Y&M Underpayments should offset Respondents'

obligations to Tri-State. In a letter to the New York State Department of Labor dated February 25,

2016, Mr. Rizzo admitted, "For the past 3 years, **Tri-State was using a combined rate of 4.8%**

when the rate was actual 9.9%. **Y & M paid based on these calculations**. It wasn't until the end

of 2015, when Tri-State's services were terminated, that we found out about the errors made." (Ex. 13 at 000050.) In other words, Y&M conceded that it was underpaying its unemployment insurance contributions based upon Tri-State's erroneous use of the lower 4.8% rate. If the correct 9.9% rate had been used, Y&M would have paid the $389,541.92 in quarterly contributions when these amounts were due rather than in February 2016, and Y&M's liability for these payments would be unchanged. Despite this written concession, Mr. Rizzo testified without any proof that he believes Tri-State charged Y&M the higher rate and pocketed the difference. (Ex. 5 at 127:19-23.) The Plaintiff reserves all rights with respect to the Y&M Underpayments, but acknowledges that Y&M has raised a genuine issue of material fact as to its liability as to these amounts.

39.     In sum, Respondents have only identified $568,636.68 for which there is any potential dispute about their liability to Tri-State ($123,206.35 for JoFaz, $709.87 for Third Avenue, and $487,788.87 for Y&M) and thus the undisputed facts entitle the Trustee to collect no less than $1,391,569.75 plus interest from Respondents.

## LEGAL STANDARD

### I.   Summary Judgment Standard

40.     Federal Rule of Civil Procedure 56 applies in adversary proceedings. Fed. R. Bankr. P. 7056. A court should grant summary judgment under Rule 56 where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Beyer v. Cty. of Nassau,* 524 F.3d 160, 163 (2d Cir. 2008) (citing Fed. R. Civ. P. 56(c)). Non-material fact issues will not prevent a court from awarding a party summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). Facts are material only if they

"might affect the outcome of the suit under the governing law." *Overton v. New York State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004) (citing *Anderson*, 477 U.S. at 248).

41.     The Court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252; *In re A & M Fla. Properties II, LLC*, 435 B.R. 9, 14 (Bankr. S.D.N.Y. 2010). Where "no reasonable jury . . . could resolve the ultimate question" in the non-moving party's favor, summary judgment is appropriate. *Meaders v. Helwaser*, 831 F. App'x 595, 596 (2d Cir. 2020). "The Court may also grant some but not all of the relief requested in a summary judgment motion if it finds disputed issues of fact as to some of the issues presented." *In re Residential Capital*, 610 B.R. 725, 734 (Bankr. S.D.N.Y. 2019).

**II.     Rule 69(a) and CPLR 5227**

42.     Rule 69(a) of the Federal Rules of Civil Procedure, made applicable here by Rule 7069 of the Federal Rules of Bankruptcy Procedure, provides that a bankruptcy court judgment is to be enforced in accordance with New York state laws and rules. *See* Fed. R. Civ. P. 69(a)(l) (judgment enforcement procedure "must accord with the procedure of the state where the court is located").

43.     CPLR 5201 provides that "[a] money judgment may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor . . . ." CPLR 5201(a). In addition, "[a] money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested . . . ." CPLR 5201(b). Accounts receivable and contract rights are assignable property subject to enforcement under CPLR 5201. *See Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14 CIV. 6512 (KPF), 2017 WL 3394604, at *5 (S.D.N.Y.

Aug. 8, 2017); *TD Bank, N.A. v. S. Shore Motor Grp., Inc.*, 953 N.Y.S.2d 554 (Sup. Ct. 2012) (table).

44.    In New York, CPLR 5227 "supplies the procedure for executing a money judgment against a third party who owes a debt to a judgment debtor." *Trustees of 1199/SEIU Greater New York Ben. Fund v. Sieger*, No. 07 CIV 9744 DLC, 2010 WL 3911474, at *6 (S.D.N.Y. Oct. 5, 2010). It provides in relevant part:

> Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment; or it may direct that a judgment be entered against such person in favor of the judgment creditor.

CPLR 5227. In a CPLR 5227 proceeding, the "judgment creditor stands in the judgment debtor's shoes, and may enforce the obligations owed to the judgment debtor." *White Plains Plaza Realty, LLC v. Cappelli Enterprises, Inc.*, 8 N.Y.S.3d 369, 371 (App. Div. 2015). The court may "compel any debtor of the judgment debtor to pay the debt, or so much of it as will satisfy the judgment, to the judgment creditor." *Port Chester Elec. Constr. Co. v. Atlas*, 40 N.Y.2d 652, 657, (1976); *see L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 634 F. Supp. 2d 290, 316 (E.D.N.Y. 2009) (directing turnover of money owed to judgment debtors by third parties to judgment creditors).

45.    "[A] special proceeding is a procedural vehicle under New York law with no equivalent under the Federal Rules of Civil Procedure, which recognize only 'one form of action—the civil action.'" *CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469 (2d Cir. 2018) (quoting Fed. R. Civ. P. 2). The "special proceeding" requirement under section 5227 can be satisfied in federal court by filing a motion seeking relief against a third party. *Id.*; *Tiffany (NJ) LLC v. Dong*, No. 11 Civ. 2183(GBD)(FM), 2013 WL 4046380, at * 10 (S.D.N.Y. Aug. 9,

2013) (the CPLR "special proceeding requirement satisfied when a plaintiff proceeds by . . . motion against the third party holding a judgment debtor's assets"). Courts in the Second Circuit have therefore afforded judgment creditors substantial procedural flexibility in bringing Turnover Motions under Rule 69(a). *See, e.g.*, *Teamsters Local 456 v. CRL Transp., Inc.*, No. 18-CV-2056 (KMK), 2020 WL 3619048, at *3 (S.D.N.Y. July 2, 2020) (Rule 69(a) "does not require strict adherence to state procedural law, and the judgment creditor may seek the relief provided under state law through a motion made in the original federal action"); *Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 121 (E.D.N.Y. 2010) ("*Mitchell I*") (same); *see also Vera v. Republic of Cuba*, 802 F.3d 242, 244 n.3 (2d Cir. 2015) ("[T]he filing requirements of a 'special proceeding' under New York law need not be strictly adhered to as long as there is no prejudice to the opposing party in giving notice of the claims and framing the issues."). Therefore, proceeding by way of motion is the appropriate procedure in federal district courts under Civil Rule 69(a), and in bankruptcy courts under Bankruptcy Rule 7069.

46.     A turnover motion is appropriate for summary disposition in a bankruptcy court proceeding under Rule 69 and CPLR 5227, even if certain issues are left for later determination. *See O'Keefe v. Landow*, 289 F.2d 465, 466 n.1 (2d Cir. 1961) ("The portion of the order preserving Bierman's right to apply to the Referee in Bankruptcy did not change a final and appealable turnover order into an interlocutory and non-appealable order. Even though the order of turn-over was without prejudice to Bierman's lien rights which were left for determination by the Referee in the bankruptcy proceedings, the turn-over order called for a final change of the possession of the fund and it was a final act of the court in the plenary action below.").

## ARGUMENT

**I.    The Undisputed Facts Show the Trustee is Entitled to Collect the Obligations Due and Owing from Respondents to Tri-State.**

47.    The undisputed facts set forth in the documents produced by Respondents and the testimony of Respondents' corporate representatives show Respondents owe Tri-State at least $1,391,569.75: the Unpaid Invoice Amount ($1,960,206.43) minus any amounts subject to genuine dispute of material fact or as to which the Trustee has conceded an offset (total of $568,636.68).

48.    The Unpaid Invoice Amount is certain and unconditional. The Tri-State Invoices, which Respondents produced to the Trustee, total $2,723,670.57. (Exs. 8-1 to 8-10.) Respondents, after receiving the Tri-State Invoices from Tri-State, provided Tri-State with checks for the full amount of the invoices. (Exs. 8-1 to 8-10; Exs. 9-1 to 9-3.) After the checks were in Tri-State's possession, Respondents directed their bank to stop payment on the checks. (Ex. 4 (Fazzia Tr.) 35:7-9, 39:8-20, 41:12-21.) All of these checks were voided. (Exs. 9-1 to 9-3.) Respondents did not stop payment because Tri-State had failed to perform the PEO services reflected by the Tri-State Invoices, but rather because of "bills" Respondents allegedly received "from the federal government, the state government . . . from other agencies." (Ex. 4 (Fazzia Tr.) at 41:12-21.) Setting aside Mr. Rizzo's demonstrably false testimony, all of the evidence shows that the Unpaid Invoice Amount is still due and owning.

49.    Respondents also defend their non-payment by alluding to Tri-State's failure to remit taxes or other payments on Respondents' behalf, and claim offsets. (*Id.* at 34:23-36:14.) However, Respondents have only adduced evidence creating a genuine issue of fact as to four categories of offsets: (i) Payroll Obligations ($12,641.30) (Ex. 10); (ii) Tax Penalties ($44,313.17) (Ex. 11); (iii) 4Q2015 Tax Payments ($122,140.29) (Ex. 12); and (iv) Y&M Underpayments

($389,541.92) (Exs. 13, 14). These claimed offsets total $568,636.68, and thus Respondents' undisputed debt to Tri-State is no less than $1,391,569.75. The Trustee is therefore entitled to judgment on the Turnover Motion in the following amounts, plus interest:

| (a) JoFaz | Unpaid Invoices | $1,193,603.58 |
|---|---|---|
| | *Less:* | |
| | Undisputed Offsets/Credits | $8,803.39 |
| | Disputed Offsets/Credits | $80,344.55 |
| | *Undisputed Balance Owed:* | *$1,104,455.64* |

| (b) Y&M | Unpaid Invoices | $675,980.91 |
|---|---|---|
| | *Less:* | |
| | Undisputed Offsets/Credits | $47,887.7 |
| | Disputed Offsets/Credits | $430,901.17 |
| | *Undisputed Balance Owed:* | *$197,192.04* |

| (c) 3rd Ave. | Unpaid Invoices | $90,621.94 |
|---|---|---|
| | *Less:* | |
| | Undisputed Offsets/Credits | $263.38 |
| | Disputed Offsets/Credits | $446.49 |
| | *Undisputed Balance Owed:* | *$89,912.07* |

## II.   Respondents' Challenges to the Turnover Motion Lack Merit

50.     In the Turnover Opposition, Respondents raise a mishmash of challenges to the Turnover Motion, none of which has merit or precludes entry of summary judgment for the Trustee.

### A.   The Turnover Motion is Proper Under CPLR 5227.

51.     Respondents claim the Turnover Motion fails to state a claim under CPLR 5227 because Respondents dispute their liability to Tri-State, and thus, the Turnover Motion is not an enforcement action but a disguised breach of contract claim. (Turnover Opp. 6-8.) This argument is unfounded. CPLR 5227's plain text contemplates disputes over the existence of a debt, *see id.*

18

("Costs of the proceeding shall not be awarded against a person who did not dispute the indebtedness."), and that provision would be eviscerated if a respondent could defeat an enforcement action with a bare assertion that the debt is disputed.[9] Moreover, as set forth above, Respondents have disputed only a fraction their liability to Tri-State, and the undisputed portion of their liability is subject to summary disposition.

52.     Contrary to Respondents' argument, the existence of a debt is a question to be litigated in the action. *See High Speed Capital, LLC v. Corp. Debt Advisors, LLC*, 339 F. Supp. 3d 137, 143 (W.D.N.Y. 2018) (applicability of section 5227 is a question to be determined within the special proceeding); *Am. Honda Fin. Corp. v. Route 57 Dev., LLC*, No. 713CV0260GTSATB, 2016 WL 843377, at *14 (N.D.N.Y. Mar. 1, 2016) (rejecting respondents' argument that the balance sheets on which Petitioner relied were inadmissible and directing respondents to satisfy judgment under CPLR 5227); *Mitchell v. Lyons Prof'l Servs., Inc.*, 109 F. Supp. 3d 555, 566 (E.D.N.Y. 2015) ("*Mitchell II*") (permitting discovery and holding trial on CPLR 5225(b) enforcement action)[10]; *Sieger*, 2010 WL 3911474 (rejecting respondent's Rule 12(b) motion to dismiss CPLR 5227 enforcement action due to plausible allegations respondent owed debt to the judgment debtor); *Costomar Shipping Co. v. Kim-Sail, Ltd.*, No. 95 CIV. 3349(KTD), 1995 WL 736907, at *3 (S.D.N.Y. Dec. 12, 1995) (authorizing discovery from a third party in support of CPLR 5227 claim); *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 560-61 (S.D.N.Y. 1977) (authorizing discovery in support of judgment enforcement under Rule 69(a)). Respondents

---

[9] The respondent in *Sieger* also argued that the district court did not have jurisdiction over the CPLR 5227 action because respondent disputed the existence of the debt. Judge Cote rejected this argument, explaining that if this were the law, "a garnishee could defeat federal jurisdiction merely by contesting garnishment." *Sieger*, 2010 WL 3911474, at *5.

[10] CPLR 5225 is a close analog of CPLR 5227. *See U.S. ex rel. Solera Const., Inc. v. J.A. Jones Const. Grp., LLC*, No. CV2003-1383 SFJMDG, 2010 WL 1269938, at *5 (E.D.N.Y. Apr. 2, 2010) ("Section 5225(b) authorizes a special proceeding by a judgment creditor to secure an order directing a third party garnishee to turn over to the creditor, in satisfaction of the judgment, 'money or other personal property in which a judgment debtor has an interest.'").

owe substantial amounts to Tri-State, and they cannot evade their seven-figure debt by claiming it is subject to a dispute.

53.     Any procedural inconsistency stemming from the filing of a CPLR 5227 action as a federal court motion can be reconciled. In *Mitchell II*, 109 F. Supp. 3d at 566, the court permitted discovery and trial in a CPLR 5225(b) turnover action brought by way of motion under Fed. R. Civ. P. 69(a). The court explained the rationale for the departure from Article 52's strictures as follows:

> Under Fed. R. Civ. P. 1, courts must apply the [Federal Rules of Civil Procedure] to secure, among other things, a "just" determination of every action. Construing plaintiffs' "motion" for a turnover, something not recognized in federal practice but nevertheless necessarily cognizable in some form, as a special proceeding instead of a plenary action, to the extent that a special proceeding would preclude recovery where a plenary action would not, in my view, is not just.

*Id.*; *see also Mitchell I*, 727 F. Supp. 2d at 123 ("[I]f a party applies for judicial relief by way of a motion when proper procedure would require the commencement of a special proceeding, or vice versa, the court can simply treat the matter as having been raised by the appropriate mechanism and proceed to the merits of the application." (citation omitted)). The federal rules thus contemplate considerable procedural flexibility when applying state-law post-judgment remedies in federal-court proceedings, and procedural variations from the state-court rules do not serve as a valid basis for dismissal.

### B.  The Turnover Motion is Supported by Evidence.

54.     Respondents also challenge the evidentiary support for the Turnover Motion, claiming "Plaintiff has not, to this point, offered any evidence of Tri-State's claim in admissible form and it does not seem possible that Plaintiff will ever be able to do so." Turnover Opp. 14. Respondents elide their own document production to the Trustee and the testimony of their corporate representatives, which, as set forth above, confirms Respondents' liability to Tri-State.

55.     In a typical state court special proceeding, a judgment creditor pursues post-judgment discovery from an account debtor under Article 52 of the CPLR before filing a turnover petition in a state-court special proceeding, and attaches evidentiary support to the turnover petition. Here, before the Trustee obtained a $98+ million judgment against Tri-State, he did precisely that—he interviewed Tri-State's principal, who provided the Tri-State Receivables Summary which identified amounts that Respondents (and Tri-State's other customers) still owed Tri-State, and then filed the Turnover Motion in this Court based on those records. The Trustee sought and obtained both document discovery and testimony from Respondents' corporate representatives, and that undisputed evidence confirms that Respondents owe Tri-State at least $1,391,569.75 million for services Tri-State provided to Respondents.

56.     *American Honda Finance Corp.* is instructive. The plaintiff sought and obtained a judgment in the District Court for the Northern District of New York. After the Second Circuit affirmed the judgment, the plaintiff moved in the district court under Rule 69(a) and CPLR 5225(b) to enforce the judgment against various parties who were liable to the defendant. Plaintiff obtained discovery from respondents in the CPLR 5225(b) action and moved for summary judgment. Respondents argued plaintiff could not proceed under CPLR 5225(b) because the documents they had produced to plaintiff were not admissible and the motion was therefore unsupported by evidence. The court flatly rejected these arguments, taking issue with the respondents' challenge to exhibits that they had produced in response to discovery requests, concluding the documents were admissible as business records, Fed. R. Evid. 803(6), statements of party-opponents, Fed. R. Evid. 802(d)(2), and under the residual exception of Fed. R. Evid. 807, and awarding summary judgment to the plaintiff. 2016 WL 843377, at *2 n.2, 14. Here, the Trustee has established

Respondents' liability through Respondents' own document production and corporate testimony. Their evidentiary challenge lacks merit.

    C.  <u>Respondents' Jury Demand Does Not Interfere with the Court's Authority to Grant Summary Judgment.</u>

57.    Respondents also challenge the Turnover Motion because they have demanded a right to a jury trial. (Turnover Opp. 9-11.) To the extent there are genuine issues of material fact, the Trustee agrees that Respondent are entitled to have them decided by a jury. But, as set forth above, only a portion of Respondents' liability is subject to any genuine factual dispute and the balance is appropriate for summary disposition by this Court. Bankruptcy courts routinely decide motions for summary judgment on non-core matters that do not involve disputed issues of fact, *In re Hypnotic Taxi LLC*, No. 15-43300 (CEC), 2017 WL 1207471, at *15 (Bankr. E.D.N.Y. Mar. 31, 2017), and the Court can and should do so here.[11]

    D.  <u>Respondents' Suggestions of Fraud Do Not Affect Their Liability.</u>

58.    Respondents have suggested that the Trustee is not entitled to recover from Respondents because Tri-State supposedly was involved in fraud. (*See* Turnover Opp. 15 (stating that Tri-State's "ordinary course of business was massive fraud"); Ex. 3 (Tr. July 28, 2020 Hr'g) at 13:4-7 ("This was a massive fraud that the trustee is asking us—asking my clients to, essentially, unweave for him."); Withdrawal Motion 16-17 (arguing that the Trustee is not pursuing the Judgment Creditor's claim, but is instead pursuing a claim of a third party); *id.* at 18 (arguing Trustee lacks standing to bring claim under *in pari delicto* doctrine).) Any such argument is meritless.

---

[11] If the parties do not consent to entry of a final order by the bankruptcy court, "it is typical practice for bankruptcy courts to submit proposed findings of fact and conclusions of law to the district court." *In re The Containership Co. (TCC) A/S*, 611 B.R. 729, 734 (S.D.N.Y. 2019), *aff'd*, 828 F. App'x 61 (2d Cir. 2020).

59.     *First*, Respondents have failed to identify any TSE fraud directed at or otherwise implicating Respondents. This Court's entry of default judgment against Tri-State required establishing TSE's fraudulent intent as transferor, not Tri-State's fraudulent intent as transferee. *Feltman v. Tri-State*, 602 B.R. at 845 ("Liability for an actual fraudulent transfer under section 276 of the NYDCL is established if a transfer is made with intent to defraud on the part of the transferor." (citing *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005))).

60.     *Second*, even if Tri-State had been a participant in TSE's fraud (as to which Respondents have produced no evidence whatsoever), there is no suggestion that it affected Tri-State's PEO services to Respondents. Respondents have argued that "it seems counterintuitive that the courts would intercede to resolve a dispute in favor of one wrongdoer against an innocent third-party" bases the *Wagoner* rule and *in pari delicto* doctrine. Withdrawal Mot. at 19. But "[t]he *Wagoner* rule stands for the well-settled proposition that a bankrupt corporation, and by extension, an entity that stands in the corporation's shoes, lacks standing to assert claims against third parties for defrauding the corporation where the third parties assisted corporate managers in committing the alleged fraud." *Feltman v. Kossoff & Kossoff LLP (In re TS Emp., Inc.)*, 603 B.R. 700, 703 (Bankr. S.D.N.Y. 2019). *Wagoner* and the *in pari delicto* doctrine simply have no application here: the Trustee never alleged that Respondents assisted either TSE or Tri-State in committing a fraud—he alleges Respondents received services from Tri-State for which they failed to remit payment. The Respondents' attempted misdirection fails, as the *in pari delicto* doctrine (even if applicable) would not excuse them from paying debts that they otherwise owe.

61.     *Third*, any attempt to muddy the waters by arguing that the Trustee is not pursuing the Judgment Creditor's claim, but is instead pursuing a claim of a third party, is misplaced. The Trustee, as the duly-appointed representative of the Judgment Creditor, obtained a judgment

against Tri-State, and as Tri-State's judgment creditor is seeking to collect unpaid receivables for the benefit of the Judgment Creditor's bankruptcy estate. The Trustee is not pursuing claims of the Judgment Creditor's creditors or any other third party—he is asserting "his own legal rights and interests" as the Judgment Creditor's estate representative. *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991).

     E.   <u>The Bankruptcy Court Has Jurisdiction Over the Turnover Motion.</u>

     62.    Respondents argue that the Court lacks jurisdiction to decide the Turnover Motion. (Turnover Opp. 11-14.) Respondents grossly misconstrue 28 U.S.C. § 1334(b)'s jurisdictional grant. "[A] civil proceeding is related to a title 11 case if the action's outcome might have *any conceivable effect* on the bankrupt estate." *Sub-Culture, LLC v. Rogers Invs. (In re Culture Project)*, 571 B.R. 555, 561 (Bankr. S.D.N.Y. 2017) (emphasis added, citing *Residential Funding Co. LLC v. UBS Real Estate Securities (In re Residential Capital, LLC)*, 515 B.R. 52, 63 n.12 (Bankr. S.D.N.Y. 2014)). "Certainty, or even likelihood, is not required to satisfy the 'conceivable effect' test; jurisdiction will exist so long as it is possible that the proceeding may affect the debtor's rights or the administration of the estate." *In re Ampal-American Israel Corp.*, No. 15-CV-7949 (JSR), 2016 WL 859352, at *2 (S.D.N.Y. Feb. 28, 2016) (citation and quotation marks omitted)). "Related to" jurisdiction will be lacking if claims have no potential to "increase the assets or affect the liability of the debtor." *In re 19 Court St. Assocs., LLC*, 190 B.R. 983, 996 (Bankr. S.D.N.Y. 1996). Accordingly, "[i]t is not difficult to conclude that the 'conceivable effect' test is satisfied" in any action brought by a trustee under state law to recover assets for a bankruptcy estate. *See Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011).

     63.    The Trustee seeks recovery of nearly $2 million in unpaid Tri-State invoices for the benefit of TSE's chapter 11 estate. This easily satisfies the "conceivable effect" test and establishes "related to" jurisdiction. Respondents argue that because the Turnover Motion involves state law,

the Court lacks jurisdiction. Even if the Court accepted this characterization of the Turnover Motion, however, there would still be "related to" jurisdiction because any recovery will redound to the benefit of TSE's bankruptcy estate.

64.     The Court also has jurisdiction over the Turnover Motion by virtue of its authority to enforce its own judgment. "As a general rule, once a federal court has entered judgment, it has ancillary jurisdiction over subsequent proceedings necessary to vindicate its authority, and effectuate its decrees. This includes proceedings to enforce the judgment." *Zeiler v. Deitsch*, 500 F.3d 157, 170 (2d Cir. 2007); *accord Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (recognizing "the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances). Federal trial courts, having entered an original judgment, have supplemental subject matter jurisdiction to hear actions to obtain amounts owing to the judgment debtor. *Mitchell II*, 109 F. Supp. 3d at 566. The trial court's enforcement jurisdiction extends to determining the existence of a debt owed to the judgment debtor. *Sieger*, 2010 WL 3911474, at *4.

## CONCLUSION

For the foregoing reasons, the Court should (i) grant the Turnover Motion, (ii) direct Respondents to pay to the Trustee the $1,391,569.75 due and owing to Tri-State that is not subject to genuine dispute of fact, namely $1,104,455.64 from Jofaz, $197,192.04 from Y&M, and $89,912.07 from Third Avenue, plus pre-judgment interest thereon in accordance with CPLR 5001 and 5004, and (iii) grant such other relief as is just and proper.

Dated: January 14, 2022,
        New York, New York

Respectfully submitted,

JENNER & BLOCK LLP

By: */s/ Vincent E. Lazar*
Vincent E. Lazar
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350
vlazar@jenner.com

Carl N. Wedoff
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600
cwedoff@jenner.com

*Counsel for the Plaintiff-Judgment Creditor*