**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | FOR PUBLICATION |
| TS EMPLOYMENT, INC., | Case No. 15-10243 (MG) |
| Debtor. | Chapter 11 |
| JAMES S. FELTMAN, not individually but solely as chapter 11 trustee for TS Employment, Inc., | |
| Plaintiff, | |
| v. | Adv. Proc. No. 17-1013 (MG) |
| TRI-STATE EMPLOYMENT SERVICE, INC., TRI-STATE EMPLOYMENT SERVICES, INC., BROADWAY PEO, INC., CARUSSO STAFFING CORP., STS GROUP, INC., TRISTATE SC, INC., ODYSSEY ASSOCIATES, INC., TRI-STATE NORTH CAROLINA, INC., TSE-PEO, INC., ROBERT CASSERA, JOHN MESSINA, JAMES FOLEY and JOSEPH CASSERA, | |
| Defendants, | |
| and | |
| JOFAZ TRANSPORTATION, INC.; Y&M TRANSIT CORP.; SCHOOL BUS BY SUPERIOR; and THIRD AVENUE TRANSIT, INC., | |
| Third-Party Respondents. | |

**MEMORANDUM OPINION, INCLUDING PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW, RECOMMENDING GRANT OF TRUSTEE'S PARTIAL SUMMARY JUDGMENT MOTION**

*A P P E A R A N C E S:*

JENNER & BLOCK LLP
*Attorneys for James Feltman, Chapter 11 Trustee*
1155 Avenue of the Americas
New York, NY 10036
By:     Vincent Lazar, Esq.
        Carl N. Wedoff, Esq.

LAWRENCE A. GARVEY & ASSOCIATES, PC
*Attorneys for Third-Party Respondents Jofaz Transportation, Inc.*, et al.
235 Main Street
Suite 630
White Plains, NY 10601
By:    Lawrence A. Garvey, Esq.
       Joseph Reiter, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

On June 18, 2019, this Court entered a *Default Judgment in Adversary Proceeding* ("Default Judgment," ECF Doc. # 60) in favor of James S. Feltman, solely as the Chapter 11 trustee ("Trustee") for the bankruptcy estate of TS Employment, Inc. ("TSE" or "Judgment Creditor") and against Tri-State Employment Service, Inc. ("Tri-State" or "Judgment Debtor") in the amount of $98,176,412 (the "Judgment").   To partially satisfy the Judgment, the Trustee filed a motion under Rule 69 of the Federal Rules of Civil Procedure ("Rule 69")[1] and section 5227 of the New York Civil Practice Law and Rules ("NY CPLR") seeking to collect all amounts owing from Jofaz Transportation, Inc. ("Jofaz"), Y&M Transit Corp. ("Y&M"), and Third Avenue Transit, Inc. ("Third Avenue," and collectively with Jofaz, and Y&M, the "Respondents") to the Judgment Debtor.   (*Motion for an Order Directing Payment of Funds to Judgment Creditor* ("Turnover Motion"), ECF Doc. # 66.)   The Trustee now moves for partial summary judgment on the Turnover Motion ("Partial Summary Judgment Motion," ECF Doc. # 95) seeking to collect $1,391,569.75, plus pre-judgment interest, from the Respondents.   (*Memorandum of Law in Support of Trustee's Motion for Summary Judgment on Trustee's Motion for Order Directing Payment of Funds to Judgment Creditor* ("Summary Judgment Memo"), ECF Doc. # 96 ¶ 5.)[2]

---

[1]    Rule 69 is made applicable here by Rule 7069 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").   Fᴇᴅ. R. Bᴀɴᴋʀ. P. 7069.

[2]    Contemporaneously with the Summary Judgment Memo, the Trustee filed a declaration by Carl. W. Wedoff ("Mr. Wedoff") in support of the Partial Summary Judgment Motion.   ("Wedoff Decl.," ECF Doc. # 97.) On February 4, 2022, the Trustee filed the *Trustee's Statement of Undisputed Material Facts in Support of Trustee's*

The Respondents filed an opposition to the Partial Summary Judgment Motion ("Opposition," ECF Doc. # 104),[3] and the Trustee filed a reply in support of the Partial Summary Judgment Motion ("Reply," ECF Doc. # 106).[4]  A hearing on the Partial Summary Judgment Motion was held on May 24, 2022 (the "May 24 Hearing").

On June 2, 2022, the Court directed the Trustee's counsel and the Respondents' counsel to submit proposed findings of fact and conclusions of law by June 16, 2022 (ECF Doc. # 111), and this deadline was later extended upon request to June 30, 2022 (ECF Doc. # 114).  On June 30, 2022, the Respondents filed their proposed findings of fact and conclusions of law ("Respondents' PFFCL," ECF Doc. # 115), and the Trustee filed his proposed findings of fact and conclusions of law ("Trustee's PFFCL," ECF Doc. # 116).[5]

For the reasons provided below, the Court recommends that the Trustee's Partial Summary Judgment Motion be **GRANTED**, and that judgment should be entered against the Respondents as follows: against Jofaz in the amount of $1,104,465.64;[6] against Y&M in the amount of $197,192.04; and against Third Avenue in the amount of $89,912.07.  Pre-judgment interest at the rate of 9% calculated from January 25, 2016 until the entry of judgment must be added to each judgment.

---

*Motion for Summary Judgment on Trustee's Motion for Order Directing Payment of Funds to Judgment Creditor.* ("Trustee's Statement of Facts," ECF Doc. # 100.)

[3]    Contemporaneously with the Opposition, the Respondents filed (i) a response to the Trustee's Statement of Facts ("Respondents' Counterstatement of Facts," ECF Doc. # 102), and (ii) a declaration by Lawrence A. Garvey in opposition to the Partial Summary Judgment Motion ("Garvey Decl.," ECF Doc. # 103).

[4]    Contemporaneously with the Reply, the Trustee filed a supplemental declaration of Mr. Wedoff in further support of the Partial Summary Judgment Motion.  ("Supp. Wedoff Decl.," ECF Doc. # 107.)

[5]    On July 1, 2022, the Respondents filed a letter objection to the Trustee's PFFCL.  (ECF Doc. # 118.)  The Court overrules the Respondents' objection.

[6]    The Trustee asserts that the amount of the judgment against Jofaz should be $1,104,455.64.  (Summary Judgment Memo ¶ 5; Trustee's PFFCL ¶ 65.)  However, as set forth below, Jofaz's unpaid invoices equal $1,193,603.58 (Summary Judgment Memo ¶ 23; Trustee's PFFCL ¶ 65), and Jofaz's offsetting liabilities equal $89,137.94.  (Summary Judgment Memo ¶¶ 34 (offset of $8,803.39), 36 (offset of $80,334.55).)  The difference between Jofaz's unpaid invoices amount and its offsets amount is $1,104,465.64.

# I.    BACKGROUND

### A.    The Adversary Proceeding

TSE filed a voluntary Chapter 11 bankruptcy petition in this Court on February 2, 2015. (Case No. 15-10243 ("Main Case"), ECF Doc. #1.)  On February 27, 2015, the United States Trustee appointed the Trustee as TSE's Chapter 11 trustee under section 1104(a) of the Bankruptcy Code.  (Main Case ECF Doc. # 33.)

On January 31, 2017, the Trustee filed this adversary proceeding against, *inter alia*, Tri-State, Tri-State Employment Services, Inc. ("Tri-State Services"), Broadway PEO, Inc. ("Broadway"), Robert Cassera ("Mr. Cassera"), John Messina, James Foley, and Joseph Cassera (collectively, the "Defendants") to recover hundreds of millions of dollars allegedly transferred by TSE to or for the benefit of the Defendants.  (Summary Judgment Memo ¶ 6.)

On June 18, 2019, the Court entered the Default Judgment in favor of the Trustee and against Tri-State in the amount of $98,176,412, against Tri-State Services in the amount of $137,030,343, and against Broadway in the amount of $31,930,387, plus post-judgment interest compounded at the rate prescribed by 28 U.S.C. § 1961.  (ECF Doc. # 60; *Feltman v. Tri-State Emp. Serv., Inc. (In re TS Emp., Inc.)*, 602 B.R. 840 (Bankr. S.D.N.Y. 2019).)  On the same day, the Court entered an order closing this adversary proceeding.  (ECF Doc. # 59.)

In September 2019, the Trustee filed a motion to reopen this adversary proceeding (ECF Doc. # 61), and on October 2, 2019, the Court granted the motion (ECF Doc. # 65).

### B.    The Turnover Motion

On October 10, 2019, the Trustee filed the Turnover Motion seeking entry of an order under Rule 69 and NY CPLR 5227 directing the Respondents (which are related entities) to pay

the Trustee all amounts that are due and owing from the Respondents to the Judgment Debtor.[7]

(Turnover Motion at 1.)  The Trustee asserted that the Respondents owe Tri-State $1,964,961.22

on account of unpaid invoices for services provided by Tri-State to the Respondents (Jofaz owes

$1,187,734.87, Y&M owes $686,248.76, and Third Avenue owes $90,977.59).  (*Id.* ¶ 8.)  That

demand was based on a summary of unpaid outstanding receivables ("Tri-State Receivables

Summary," ECF Doc. # 97-1) that Tri-State, acting through its principal Mr. Cassera, provided

to the Trustee.  (Summary Judgment Memo ¶ 9.)

On March 6, 2020, the Trustee served requests for production on each Respondent.  (*Id.* ¶

10 (citing ECF Doc. # 97-2).)  In August 2020, the Trustee conducted Rule 30(b)(6) depositions

of Joseph Fazzia ("Mr. Fazzia"), the Respondents' President, and Al Rizzo ("Mr. Rizzo"), the

Respondents' Office Manager and Comptroller.  (*Id.* ¶ 12 (citing ECF Doc. ## 97-4, 97-5).)

Between September 15, 2020 and December 7, 2020, the Respondents produced 6,634 pages of

additional documents in four document productions.  (*Id.* ¶ 14.)

On October 7, 2020, the Respondents filed an objection and opposition to the Turnover

Motion ("Turnover Opposition," ECF Doc. # 83-1), making the following arguments: (i) the

Turnover Motion was not properly brought under NY CPLR 5227 because the Respondents

dispute the debt they owe to Tri-State; (ii) the Court could not consider the Turnover Motion

because the Respondents asserted a right to a jury trial; (iii) the Court lacked jurisdiction over the

Turnover Motion; (iv) Tri-State's involvement in a broader fraud precluded any recovery by the

Trustee; and (v) the Turnover Motion should be denied for lack of evidentiary support.  (*See*

Turnover Opposition; Respondents' PFFCL ¶ 14; *see also* Summary Judgment Memo ¶ 15.)

---

[7]    The Turnover Motion also sought to collect receivables owed to Tri-State by School Bus By Superior ("Superior").  The Trustee does not seek to collect these amounts from the Respondents and does not seek summary judgment on his claims against Superior in the Partial Summary Judgment Motion.  (Summary Judgment Memo at 11 n.3.)

### C.    The Respondents' Motion to Withdraw the Reference

Prior to the Court issuing a decision on the Turnover Motion, the Respondents filed a

motion to withdraw the reference to this Court.  ("Withdrawal Motion," ECF Doc. # 87.)  The

Withdrawal Motion was fully briefed, and on November 2, 2021, District Judge John P. Cronan

denied the Withdrawal Motion without prejudice.  ("Withdrawal Opinion and Order," ECF Doc.

# 91.)

### D.  Pre-Motion Conference

On November 3, 2021, the Trustee filed a letter with the Court stating that he believed the

Trustee's claims against the Respondents were ripe for partial summary judgment and seeking a

pre-motion conference.  (ECF Doc. # 92; Respondents' PFFCL ¶ 23.)  On December 16, 2021,

the Court held a pre-motion conference and authorized the parties to submit cross-motions for

summary judgment.  (Trustee's PFFCL ¶ 21 (citing ECF Doc. # 107-1 at 17:19–22).)

## II.    THE PARTIAL SUMMARY JUDGMENT MOTION

### A.  The Summary Judgment Memo

The Trustee asserts that Tri-State's Business Records (defined below) show that the

Respondents owe Tri-State $1,960,206.43 (the "Unpaid Invoice Amount")[8] for professional

employer organization ("PEO") services that Tri-State provided for the Respondents from

November 30, 2015 through December 27, 2015.[9]  (Summary Judgment Memo ¶¶ 22, 23.)  The

---

[8]    Jofaz has unpaid invoices of $1,193,603.58, Y&M has unpaid invoices of $675,980.91, and Third Avenue has unpaid invoices of $90,621.94.  (Summary Judgment Memo ¶ 23; Trustee's PFFCL ¶ 65.)

The Unpaid Invoice Amount ($1,960,206.43) is $4,754.79 less than the amount the Trustee sought in the Turnover Motion ($1,964,961.22) because the Turnover Motion was based on the Tri-State Receivables Summary, which contained "24 small entries for which Respondents did not produce invoices or other documentation, and which included several entries in negative amounts."  (Summary Judgment Memo at 15 n.6.)  The Trustee states he will not be pursuing any claims with respect to the additional $4,754.79.  (*Id.*)

[9]    The Respondents each operate school bus companies in New York City.  (Trustee's PFFCL ¶ 26 (citing ECF Doc. # 97-4 at 12:14–13:6).)  Pursuant to the PEO services, the Respondents would report employee hours and wages to Tri-State; Tri-State would remit payroll taxes and insurance payments to the relevant authorities and

6

Trustee states that the Respondents have identified $568,636.68 in potential offsets (the

"Offsets") to the Unpaid Invoice Amount.  Therefore, the Trustee asserts that the undisputed

facts entitle the Trustee to collect from the Respondents $1,391,569.75, plus pre-judgment

interest under NY CPLR 5001 and 5004,[10] and partial summary judgment should be granted in

that amount.  (*Id.* ¶ 5.)

The Trustee states that, in response to his discovery requests, the Respondents produced

ten sets of their business records (collectively, the "Business Records," ECF Doc. ## 97-8–97-

17) consisting of Tri-State invoices ("Tri-State Invoices"), copies of check stubs, and

handwritten notations.  (*Id.* ¶ 22 (citing Business Records).)  The Business Records related to

PEO services rendered by Tri-State to the Respondents from November 30, 2015 through

December 27, 2015, for which the relevant Tri-State Invoices aggregated $2,723,670.57.  (*Id.*)

Of that amount, the Business Records show that the Respondents satisfied $763,464.14 through

partial payment of certain December 2015 invoices on or about January 25, 2016, leaving the

Unpaid Invoice Amount due and owing.  (*Id.*)

---

prepare paychecks for distribution to the Respondents' employees; and then the Respondents would reimburse Tri-State for these charges in addition to an administrative fee for Tri-State's services.  (*Id.* ¶ 27 (citing ECF Doc. # 97-4 at 26:14–23).)

[10]    NY CPLR 5001(a) provides:

Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

NY CPLR 5001(a).  NY CPLR 5001(b) provides, in relevant part, that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed . . . ."  NY CPLR 5001(b).  NY CPLR 5004 provides, in relevant part, that "[i]nterest shall be at the rate of nine per centum per annum[.]"

The Trustee contends that it is entitled to 9% interest from the date that each unpaid Tri-State Invoice amount became due (January 25, 2016) through the date of judgment "because the Turnover Motion seeks to collect payment based on Respondents' 'act[s] or omissions depriving or otherwise interfering with title to, or possession or enjoyment of, property.'"  (Summary Judgment Memo at 10 n. 2 (quoting NY CPLR 5001(a)).)

The Trustee contends that the Respondents' Unpaid Invoice Amount and the $763,464.14 partial payment are confirmed by Mr. Fazzia's testimony in his Rule 30(b)(6) deposition, and by the Respondents' QuickBooks accounting records (the "QuickBooks Records," ECF Doc. ## 97-18–97-20). (*Id.* ¶¶ 26–28, 31.) Mr. Fazzia testified that around December 2015, he first directed the Respondents to stop payment on checks to Tri-State (*id.* ¶ 26 (citing ECF Doc. # 97-4 at 35:7–9), and later he directed the Respondents to pay only one set of invoices in order to secure the release of W-2 tax forms for the Respondents' employees. (*Id.* ¶ 28 (citing ECF Doc # 97-4 at 43:16–20).) The Trustee states that the Respondents' QuickBooks Records confirmed that the Business Records, and Mr. Fazzia's testimony that only one set of payments had been made, were accurate. (*Id.* ¶ 31.)

According to the Trustee, the Respondents have identified $568,636.68[11] in potential Offsets made up of the following: (a) reimbursement checks in the amount of $12,641.30, issued by the Respondents to sixteen employees who had been issued payroll checks by Tri-State that were later dishonored ("Dishonored Paychecks"); (b) interest and tax penalties in the amount of $44,313.17, incurred by the Respondents due to Tri-State's failure to timely remit certain tax payments ("Tax Penalties"); (c) payments totaling $122,140.29, made by the Respondents for New York State unemployment insurance obligations for the fourth quarter of 2015 ("4Q2015 Tax Payments"); and (d) payments totaling $389,541.92, made by Y&M to the New York State Department of Labor to satisfy its underpayments in quarterly unemployment insurance contributions from the third quarter of 2013 through the fourth quarter of 2015 ("Y&M Underpayments," and together with the 4Q2015 Tax Payments, the "Disputed Offsets"). (*Id.* ¶¶ 34–37.) The Trustee does not contest the validity of the Offsets for Dishonored Paychecks and

---

[11]    Jofaz's offsets equal $89,137.94 (*see* Summary Judgment Memo ¶¶ 34, 36); Y&M's offsets equal $478,788.87 (*see id.* ¶¶ 34, 35, 36, 37); and Third Avenue's offsets equal $709.87 (*see id.* ¶¶ 34, 35, 36).

Tax Penalties.  (*Id.* ¶¶ 34, 35.)  The Trustee does contest the Disputed Offsets, but he acknowledges that the Respondents have raised a genuine issue of material fact as to them.  (*Id.* ¶¶ 36, 38.)  Therefore, the Trustee deducts the entire Offsets amount ($568,636.68) from the Unpaid Invoice Amount, leaving $1,391,569.75.[12]  (*Id.* ¶ 39.)

The Trustee argues that the Respondents' arguments in the Turnover Opposition lack merit.  First, in response to the Respondents' argument that the Turnover Motion fails to state a claim under NY CPLR 5227 because the Respondents' dispute their debt to Tri-State, the Trustee argues (i) the plain text of NY CPLR 5227 contemplates disputes over the existence of a debt (*id.* ¶ 51 (citing NY CPLR 5227 ("Costs of the proceeding shall not be awarded against a person who did not dispute the indebtedness."))), and (ii) whether a debt exists can be litigated in a NY CPLR 5227 action.  (*Id.* ¶ 52 (citing cases).)[13]  Further, the Trustee contends that the "special proceeding" requirement in NY CPLR 5227 "can be satisfied in federal court by filing a motion seeking relief against a third party."  (*Id.* ¶ 45 (citing *CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469 (2d Cir. 2018).)

Second, the Trustee argues that the Turnover Motion is supported by sufficient evidence because the Respondents' own document production to the Trustee and the testimony of their

---

[12]    In a letter to the Court, dated May 27, 2022 (ECF Doc. # 110), the Trustee's counsel stated that in the event the Court recommends the grant of partial summary judgment, "the Trustee does not intend to pursue the balance of the claims asserted in the Turnover Motion, and would consent to dismissal of those claims.  In that case, the Court could enter proposed findings of facts and conclusions of law in accordance with Rule 9033 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 9033-1 fully disposing of the Turnover Motion."

Because the Turnover Motion raises a "related-to," non-core matter arising under state law, and the Trustee has agreed to consent to dismissal of the remaining claims if summary judgment is granted, a Bankruptcy Court may not enter a final order or judgment absent consent.  Rather, proposed findings of fact must be filed, and the procedure set forth in Federal Rule of Bankruptcy Procedure 9033 must be followed.  *See O'Toole v. McTaggart (In re Trinsum Group, Inc.)*, 467 B.R. 734, 739–41 (Bankr. S.D.N.Y. 2012).

[13]    The Trustee also points out that the Respondents have only disputed a fraction of their liability to Tri-State (i.e., the Offsets) and so the undisputed portion of their liability is subject to summary disposition even under the Respondents' argument.  (*Id.* ¶ 51.)

corporate representatives confirm the Respondents' liability to Tri-State.  (*Id.* ¶¶ 54, 56 (citing

*American Honda Finance Corp. v. Route 57 Dev., LLC*, No. 713CV0260GTSATB, 2016 WL

843377, at *2 n.2, 14 (N.D.N.Y. Mar. 1, 2016) (holding that documents the respondents

produced to the plaintiff in a NY CPLR 5225(b) action were admissible and the summary

judgment motion was therefore supported by sufficient evidence)).)

 Third, the Trustee contends that the Respondents' fraud defense—that Tri-State's

involvement in a broader fraud precludes any recovery by the Trustee—fails.  The Trustee

argues that the Respondents failed to identify any TSE fraud directed at or otherwise implicating

the Respondents, and even if Tri-State had been a participant in TSE's fraud, there is no

suggestion that TSE's fraud affected Tri-State's PEO services to the Respondents.  (*Id.* ¶¶ 58–

60.)

 Finally, the Trustee argues that the Court has "related to" jurisdiction over the Turnover

Motion under 28 U.S.C. § 1334(b) because the Trustee seeks recovery for the benefit of the

TSE's Chapter 11 estate.  (*Id.* ¶¶ 62–63.)  The Trustee also argues that the Respondents' demand

for a jury trial does not interfere with the Court's authority to grant summary judgment because

only a portion of the Respondents' liability ($568,636.68) is subject to any genuine factual

dispute, and the balance ($1,391,569.75) is appropriate for partial summary disposition by the

Court.  (*Id.* ¶ 57.)

 **B. Opposition**

 The Respondents raise several objections to the Partial Summary Judgment Motion in

their Opposition.  First, the Respondents argue that summary judgment is premature because

there has been no decision by the Court on the Turnover Motion and the Turnover Opposition.

(Opposition at 17.)  According to the Respondents, the Withdrawal Opinion and Order

"recognized Respondents' [Turnover] Opposition to be the equivalent of a motion for dismissal," and implicitly understood, if not directed, that the Court would determine the Turnover Motion and Turnover Opposition. (*Id.* at 17–18 (citing Withdrawal Opinion and Order at 6).)

Second, the Respondents argue that many of the Trustee's undisputed facts are not supported by admissible evidence because the facts rely on assertions made in the Wedoff Declaration, and Mr. Wedoff's contentions may not have been made on "personal knowledge" as required under Federal Rule of Civil Procedure 56(c)(4). *See* FED. R. CIV. P. 56(c)(2) and (4); (Opposition at 19–20 (quoting the Wedoff Decl. ¶ 3)). Additionally, the Respondents argue that the Trustee's conclusions drawn from the Business Records present triable issues of fact, and not undisputed facts, because a Certified Public Accountant ("CPA") is required to interpret the Business Records. (Opposition at 26–27.)[14]

Third, the Respondents argue that Tri-State's involvement in a broader fraud precludes any recovery by the Trustee. (*Id.* at 28.) The Respondents contend that "[t]he fact that Tri-State

---

[14]    The Respondents also argue that the Tri-State Receivables Summary is not admissible evidence because it cannot be authenticated by Mr. Wedoff since he has no personal knowledge of the document, and even if the Tri-State Receivables Summary could be authenticated, its contents are still inadmissible hearsay that do not qualify as a regularly conducted activity under FED. R. EVID. 803(6) ("Records of a Regularly Conducted Activity"). (*Id.* at 21–23 (citing FED. R. EVID. 803(6)(A)–(E)).) However, the Trustee points out in his Reply that he is not relying on the Tri-State Receivables Summary to establish the Respondents' liability to Tri-State but is instead relying upon the Business Records that the Respondents produced and on the testimony of the Respondents' Rule 30(b)(6) witnesses. (Reply ¶ 12.)

The Respondents also ignore Federal Rule of Evidence 1006, Summaries to Prove Contents, which provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

FED. R. EVID. 1006.

The chart prepared by the Trustee's counsel is a summary of Respondents' own records which they produced to the Trustee during discovery.

has failed to pay their own payroll taxes . . . is highly relevant to Respondents' claim that Tri-State did not remit payroll taxes, and Workers' Compensation payments, as required by the agreements with Respondents." (*Id.*) According to the Respondents, "[t]he Trustee's insinuation, that Robert Cassera's fraud was limited to TSE, is disingenuous and contradicted by his own allegations." (*Id.* at 28–29.)

Finally, the Respondents renew their arguments made in the Turnover Opposition that (1) NY CPLR 5227 does not authorize the underlying Turnover Motion because the "mere allegation of a debt owed to the judgment debtor is not sufficient grounds for executing the judgment against a third party under CPLR Article 52" and "certainty" is required under NY CPLR 5201 (*id.* at 7–8 (citing *Colonial Press of Miami, Inc. v. Banko/Commerce*, 71 Misc. 2d 987, 988 (App. Term 1972); *Glassman v. Hyder*, 23 N.Y.2d 354, 358–60 (1968) ("Where a duty to pay is conditioned on the creditor's future performance, or upon contractual contingencies, there is no debt certain to become due.") (citing *Sheehy* v. *Madison Sq. Garden Corp.*, 266 N.Y. 44, 47 (1934)); *Herrmann & Grace* v. *City of New York*, 114 N.Y.S. 1107 (App. Div. 1909))); (2) the Respondents have a Constitutional Right to have the disputed factual issues determined by a jury; and (3) the Court lacks jurisdiction to hear or decide the Turnover Motion. (*Id.* at 7–8.)

### C.    Reply

In his Reply, the Trustee argues that the Turnover Motion is properly brought under NY CPLR 5227 because the Respondents' debt owed to Tri-State is not contingent or conditional simply because the Respondents dispute some portion of their liability. (Reply ¶ 9.) Next, the Trustee argues that the Respondents' jury demand has no bearing on the relief being requested because facts are not tried at summary judgment. (*Id.* ¶ 10.)

The Trustee states that the Business Records upon which he relies are uncomplicated and do not require the expertise of a CPA nor any specialized knowledge. (*Id.* ¶ 13.) Additionally, the QuickBooks Records are admissible as business records under Fed. R. Evid. 803(6), statements of party-opponents under Fed. R. Evid. 802(d)(2), and the residual exception under Fed. R. Evid. 807. (*Id.* ¶ 14.)

The Trustee reiterates his argument that the Respondents' allegations that Tri-State participated in TSE's fraud "has no bearing on this matter because the Trustee already has taken those offsets into account in calculating the amount owed" and the Respondents have not presented any basis under which Tri-State's alleged offsetting liabilities would extinguish all of the Respondents' liability to Tri-State. (*Id.* ¶ 21.)

### D.    The May 24 Hearing

At the May 24 Hearing, the Court admitted the Business Records and QuickBooks Records into evidence over objections from the Respondents' counsel. ("May 24 Hr'g Tr.," ECF Doc. # 112 at 11:16–12:20; 17:14–15). The Court also admitted four letters into evidence: (1) a letter from Mr. Rizzo to the New York State Department of Labor, dated February 25, 2016 (ECF Doc. # 103-6), (2) a letter from Mr. Cassera to Mr. Fazzia, dated October 13, 2016 ("First Cassera Letter," ECF Doc. # 103-7), (3) a second letter from Mr. Cassera to Mr. Fazzia, dated October 19, 2016 ("Second Cassera Letter," ECF Doc. # 103-8), and (4) a letter from the Respondents' counsel to Mr. Casssera, dated October 21, 2016 (ECF Doc. # 103-9). (*Id.* at 50:17–51:3; 51:4–12; 51:16–24; 51:25–52:8.)

### III.    LEGAL STANDARD

#### A.    Jurisdiction

The district courts have original and exclusive jurisdiction of bankruptcy cases, and

original but not exclusive jurisdiction of civil proceedings arising under title 11, or arising in or

related to cases under title 11.  28 U.S.C. § 1334(a) & (b).  If the district courts have jurisdiction

over bankruptcy cases and proceedings, so do the bankruptcy courts under 28 U.S.C. § 157(a)

and a district's order of reference.  *See, e.g.,* General Order M-431 (Bankr. S.D.N.Y. Feb. 1,

2012) ("Pursuant to 28 U.S.C. Section 157(a) any or all cases under title 11 and any or all

proceedings arising under title 11 or arising in or related to a case under title 11 are referred to

the bankruptcy judges for this district."); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011)

("Section 157 allocates the authority to enter final judgment between the bankruptcy court and

the district court.  *See* §§ 157(b)(1), (c)(1).  That allocation does not implicate questions of

subject matter jurisdiction.").

"[A] civil proceeding is related to a title 11 case if the action's outcome might have *any*

*conceivable effect* on the bankrupt estate."  *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639

F.3d 572, 579 (2d Cir. 2011) (quoting *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 114 (2d Cir.

1992) (internal quotation marks omitted) (emphasis added); *Sub-Culture, LLC v. Rogers Invs. (In*

*re Culture Project)*, 571 B.R. 555, 561 (Bankr. S.D.N.Y. 2017) (citing *Residential Funding Co.*

*LLC v. UBS Real Estate Securities (In re Residential Capital, LLC)*, 515 B.R. 52, 63 n.12

(Bankr. S.D.N.Y. 2014)).  To come within the scope of "related to" jurisdiction, the litigation

must have a "significant connection" with the bankruptcy.  *In re 19 Court St. Assocs., LLC*, 190

B.R. 983, 996 (Bankr. S.D.N.Y. 1996) (citing *In re Turner*, 724 F.2d 338, 340–41 (2d Cir.

1983)).  Jurisdiction is not present where the "related" controversy is too tangential to the

bankruptcy case. *Turner*, 724 F.2d at 341; *Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*, 353 B.R. 51, 60 (Bankr. S.D.N.Y. 2006). "Related to" jurisdiction will be lacking if claims have no potential to "increase the assets or affect the liability of the debtor." *19 Court St. Assocs.*, 190 B.R. at 996. However, "[c]ertainty, or even likelihood, is not required to satisfy the 'conceivable effect' test; jurisdiction will exist so long as it is possible that the proceeding may affect the debtor's rights or the administration of the estate." *In re Ampal-American Israel Corp.*, No. 15-CV-7949 (JSR), 2016 WL 859352, at *2 (S.D.N.Y. Feb. 28, 2016) (citation and quotation marks omitted). Accordingly, "[i]t is not difficult to conclude that the 'conceivable effect' test is satisfied" in an action brought by a trustee under state law to recover assets for a bankruptcy estate. *See Parmalat*, 639 F.3d at 579.

### B.    Summary Judgment Standard

Federal Rule of Civil Procedure 56, which is made applicable here by Bankruptcy Rule 7056, provides that a court shall grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a question of material fact and, in making this determination, the Court must view all facts in the light most favorable to the nonmoving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132, 137 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant meets its burden "[t]hen the onus shifts to the party resisting summary judgment." *Holcomb*, 521 F.3d at 137. "'[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *In re Kao*, 612 B.R. 272, 280 (Bankr. S.D.N.Y. 2020) (quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d

Cir. 2010)).  Instead, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  FED. R. CIV. P. 56(c)(1)(A).

### C.    NY CPLR 5227

Rule 69, made applicable to adversary proceedings by Bankruptcy Rule 7069, governs motions to enforce a money judgment.  Rule 69 provides that "proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  FED. R. CIV. P. 69(a)(1).

NY CPLR 5201 provides, in relevant part, that "[a] money judgment may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor," and "[a] money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested."  NY CPLR 5201(a)–(b).

In New York, NY CPLR 5227 "supplies the procedure for executing a money judgment against a third party who owes a debt to a judgment debtor."  *Trustees of 1199/SEIU Greater New York Ben. Fund v. Sieger*, No. 07 Civ. 9744(DLC), 2010 WL 3911474, at *6 (S.D.N.Y. Oct. 5, 2010).  NY CPLR 5227 provides, in relevant part:

> Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment; or it may direct that a judgment be entered against such person in favor of the judgment creditor.  Costs of the proceeding shall not be awarded against a person who did not dispute the indebtedness.

NY CPLR 5227.

Although a special proceeding does not have an equivalent under the Federal Rules of Civil Procedure, the Second Circuit has held that a party seeking to collect a money judgment

under NY CPLR article 52 "may proceed by motion and need not commence a special

proceeding." *CSX Transportation, Inc.*, 879 F.3d at 469; *see also Vera v. Republic of Cuba*, 802

F.3d 242, 245 (2d Cir. 2015) ("We note . . . that we have summarily indicated that the filing

requirements of a 'special proceeding' under New York law need not be strictly adhered to as

long as there is no prejudice to the opposing party in giving notice of the claims and framing the

issues.").

## IV.    **DISCUSSION**

### A.    **The Respondents' Procedural Arguments Fail**

#### 1.    **The Court Has Jurisdiction Over the Turnover Motion**

Under 28 U.S.C. § 1334(b), "a civil proceeding is related to a title 11 case if the action's

outcome might have any conceivable effect on the bankrupt estate." *In re Culture Project*, 571

B.R. at 561 (citing *Residential Funding Co. LLC*, 515 B.R. at 63 n.12). Here, the "conceivable

effect" on the TSE estate is clear. Through the Partial Summary Judgment Motion, the Trustee

seeks recovery of $1,391,569.75, plus pre-judgment interest, in unpaid Tri-State Invoices for the

direct benefit of TSE's Chapter 11 estate. (Summary Judgment Memo ¶ 63.) Therefore, the

Turnover Motion is "related to" the chapter 11 case, which establishes jurisdiction under 28

U.S.C. § 1334(b).

The Court rejects the Respondents' argument that because the Turnover Motion involves

state law, the Court lacks jurisdiction. (Turnover Opposition at 13–14.) Regardless of this

characterization, any recovery from the Turnover Motion would undeniably contribute to the

benefit of TSE's bankruptcy estate. (Summary Judgment Memo ¶ 63.) The outcome of the

Partial Summary Judgment Motion easily satisfies the "conceivable effect" test and establishes

"related to" jurisdiction. (*Id.*) *See Parmalat*, 639 F.3d at 579 (holding that it was "not difficult

to conclude that the 'conceivable effect' test is satisfied" in an action brought by a trustee under state law to recover assets for a bankruptcy estate).

### 2.    The Partial Summary Judgment Determination is Not Premature

The Respondents assert that since there was no decision on the Turnover Opposition then, "accordingly, the Trustee's Motion for Summary Judgment is premature." (Opposition at 17–18.)  Their argument rests on the premise that the Court cannot grant summary judgment because the Turnover Opposition was filed in response to the Turnover Motion and the Court has not issued a ruling on those pleadings. (*Id.*)  The Respondents cite to no authority to support this assertion, apart from an "implicit . . . understanding, if not direction" from the District Court's Withdrawal Opinion and Order that the Court would determine the Opposition Motion. (*Id.* at 11.)  The Court has reviewed the Withdrawal Opinion and Order and finds there was no such directive—implicit or otherwise—requiring the Court to decide the Turnover Motion and Turnover Opposition prior to deciding the Partial Summary Judgment Motion.  Therefore, the Respondents' argument fails.

### 3.    A Right to a Jury Trial is Irrelevant in the Absence of Genuine Issues of Material Fact

Respondents assert they have a right to a jury trial. (Turnover Opposition at 9–11.)  To the extent there are genuine issues of material fact, the Trustee agrees that the Respondents are entitled to have them decided by a jury. (Summary Judgment Memo ¶ 57.)  However, only a fraction of the Respondents' liability is subject to any genuine factual dispute. (*Id.*)  Further, to the extent the Respondents did raise issues of fact, the Trustee excluded the amounts from the Partial Summary Judgment Motion. (*Id.*; *see also* May 24 Hr'g Tr. at 9:4–6.)  The Court finds that because this is a motion for partial summary judgement, decided upon only undisputed issues of fact, the Respondents' jury rights are not implicated. (Summary Judgment Memo ¶

17-01013-mg   Doc 119   Filed 07/08/22   Entered 07/08/22 08:06:38   Main Document
Pg 19 of 23

57.)  Bankruptcy courts routinely decide motions for summary judgment on non-core matters

that do not involve disputed issues of fact.  (*Id*. (citing *In re Hypnotic Taxi LLC*, 2017 WL

1207471, at *15 (Bankr. E.D.N.Y. Mar. 31, 2017)).)

### 4.    The Turnover Motion States a Claim Under NY CPLR 5227

The Turnover Motion states a valid claim under NY CPLR 5227.  A motion brought

under NY CPLR 5227 must satisfy the requirements in NY CPLR 5201.  *See Colonial Press of*

*Miami, Inc.*, 71 Misc. 2d at 988; *see also Mitchell v. Lyons Pro. Servs., Inc.*, 109 F. Supp. 3d

555, 562 (E.D.N.Y. 2015), *aff'd sub nom. Mitchell v. Garrison Protective Servs., Inc.*, 819 F.3d

636 (2d Cir. 2016) (stating that NY CPLR 5225 must satisfy requirement in CPLR 5201 because

NY CPLR 5225 "is part of the 'Enforcement of Judgments' provision of that statute").

The cases cited by the Respondents in their Opposition each held that a specific debt in

question was too contingent or conditional to satisfy NY CPLR 5201(a).[15]  *See Glassman*, 23

N.Y. 2d at 359 (holding that future rents are not debts certain to become due and so are not

property subject to enforcement under NY CPLR 5201); *Colonial Press of Miami, Inc.*, 71 Misc.

2d at 989 (holding that "a claim for facilitating an allegedly unauthorized diversion of corporate

funds" was too contingent under NY CPLR 5201); *Supreme Merch Co.*, 70 N.Y.2d at 350

(holding that a negotiable letter of credit was a contingent debt outside the scope of NY CPLR

5201).  Unlike the debts in question in those cases, the Respondents' debt owing to Tri-State is

not contingent or conditional on some future event.  The Respondents' debt to Tri-State arises

from previously unpaid PEO services as reflected in the Business Records.  *See Bata Shoe Co.,*

*Inc. v. Silvestre Segarra e Hijos, S.A.*, 396 N.Y.S.2d 369, 371 (App. Div. 1977) ("The obligation

---

[15]     "A money judgment may be enforced against any debt, which is past due or which is yet to become due,
*certainly* or upon demand of the judgment debtor."  NY CPLR 5201(a) (emphasis added).

19

evidenced by an account receivable does not depend on the occurrence of a future, uncertain

event; it is a debt already arisen between the contracting parties."). The Court finds that the

Respondents' debt owed to Tri-State satisfies the requirements of NY CPLR 5201, and the

Turnover Motion states a valid claim under NY CPLR 5227.

    **B.**    **The Undisputed Facts Show the Trustee is Entitled to Partial Summary Judgment**

The Trustee has met his burden of showing that there is no genuine dispute as to any

material fact and he is entitled to partial summary judgment as a matter of law. FED. R. CIV. P.

56(a). The Trustee has shown that there is no dispute that (i) Tri-State provided PEO services to

the Respondents (Respondents' Counterstatement of Facts ¶ 19; Opposition at 6), (ii) the

Respondents produced the Business Records related to Tri-State's PEO services rendered from

November 30, 2015 through December 27, 2015 (Respondents' Counterstatement of Facts ¶ 21),

and (iii) the Respondents maintained the QuickBooks Records that they produced to the Trustee.

(*Id.* ¶ 29; May 24 Hr'g Tr. at 17:10–13.)

In support of the Partial Summary Judgment Motion, the Trustee relies on the Business

Records and QuickBooks Records. The Respondents argue, without citing to any case law, that

a CPA or other expert is required to interpret the Business Records and QuickBooks Records.

(Opposition at 26–27.) The Court disagrees with the Respondents and finds that it does not

require a CPA or other expert to interpret the records. *See Randolph v. Collectramatic, Inc.*, 590

F.2d 844, 848 (10th Cir. 1979) ("There is no fixed or general rule that [r]equires expert

testimony.") The Business Records and QuickBooks Records show that the Respondents made a

partial payment to Tri-State in the amount of $763,464.14, leaving the Unpaid Invoice Amount

($1,960,206.43). (*See* Business Records; QuickBooks Records.) *See White Diamond Co., Ltd. v.

Castco, Inc.*, 436 F. Supp. 2d 615, 623 (S.D.N.Y. 2006) (stating that "partial payment . . . after

receipt of an account stated [is] evidence of assent to the account stated"). The Business Records also show that the Respondents have identified the Offsets ($568,636.68), which leaves an undisputed amount of $1,391,569.75. (*See* Business Records; QuickBooks Records.) Since the Trustee met his initial burden of showing no genuine dispute as to this amount, the Respondents have the burden to resist partial summary judgment by citing to specific materials in the record. *See Holcomb*, 521 F.3d at 137; FED. R. CIV. P. 56(c)(1)(A).

To oppose the Partial Summary Judgment Motion, the Respondents rely primarily on their argument that Tri-State's involvement in a broader fraud precludes summary judgment. (Opposition at 28–29.) However, in their Opposition the Respondents make only general statements that TSE committed fraud and fail to cite to any "particular parts of materials in the record" showing that TSE or Tri-State committed acts of fraud against the Respondents. FED. R. CIV. P. 56(c)(1)(A); *see also In re Kao*, 612 B.R. at 280 ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.") (quoting *Hicks*, 593 F.3d at 166). Additionally, at the May 24 Hearing, the Court repeatedly asked Respondents' counsel to identify evidence in the record showing that Tri-State committed fraud against the Respondents, and counsel was unable to do so:

> THE COURT: Is there any evidence in the record to show that Tri-State invoiced the respondents a larger amount than it was remitting to the tax authorities and pocketed the difference?

> MR. REITER: I don't have evidence of that.

(May 24 Hr'g Tr. at 53:13–16.)

> THE COURT: I mean, either you have evidence in the record that shows that the respondents were injured by fraud, and then I would say, well, what specifically were the acts fraud that injured the respondents? And you can't point me to any specific evidence in the summary judgment record on that, correct?

> MR. REITER: Correct.

21

(*Id.* at 54:17–22.)

> THE COURT: There's nothing in either [the First Cassera Letter or Second Cassera Letter] that shows that these were amounts that the respondents paid to Tri-State and then Tri-State was supposed to forward payments to the tax authorities [but did not], correct?

> MR. REITER: Correct.

(*Id.* at 59:17–21.)

> THE COURT: Mr. Reiter, show me the evidence that shows that your clients were paying money to Tri-State that Tri-State was pocketing rather than forwarding on to tax authorities.

> MR. REITER: I have nothing else.

(*Id.* at 60:15–19.)

The Respondents failed to identify anything in the record that establishes a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A). For the reasons explained above, the Respondents objections to the entry of partial summary judgment are **OVERRULED**. Therefore, the Trustee is entitled to partial summary judgment.

The Trustee also requests the award of 9% pre-judgment interest under NY CPLR 5001(a), (b), and 5004. The Trustee provides that:

> [b]ecause the Turnover Motion seeks to collect payment based on Respondents' "act[s] or omissions depriving or otherwise interfering with title to, or possession or enjoyment of, property," the Trustee is entitled to 9% interest from the date each unpaid invoice became due.

(Summary Judgment Memo at 10 n.2 (quoting NY CPLR 5001(a)).) The Trustee's PFFCL correctly points out that the Respondents did not object or challenge the Trustee's entitlement to pre-judgment interest. (Trustee's PFFCL ¶ 74.)

NY CPLR 5001 provides as follows:

> (b) **Date from which computed**. Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages

incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

NY CPLR 5001(b). The Trustee asserts that "[c]onservatively, the invoices became due January 25, 2016, the date Respondents issued checks in partial payment of the December 2015 invoices (and several weeks after stopping on the original checks)." (Reply ¶ 23 (citing QuickBooks Records); *see also* Trustee's PFFCL ¶ 74.) The Court finds and concludes that using the starting date of January 25, 2016 for computing pre-judgment interest is reasonable. The precise amount of pre-judgment interest that would be due cannot be determined until the date at which judgment is entered.

## V.    <u>CONCLUSION</u>

For the reasons provided above, the Court recommends that the Trustee's Partial Summary Judgment Motion be **GRANTED**, and that judgment should be entered against the Respondents as follows: against Jofaz in the amount of $1,104,465.64; against Y&M in the amount of $197,192.04; and against Third Avenue in the amount of $89,912.07. Pre-judgment interest at the rate of 9% calculated from January 25, 2016 until the entry of judgment must be added to each judgment.

Dated:    July 8, 2022
          New York, New York


                              *Martin Glenn*
                        _____
                              MARTIN GLENN
                    Chief United States Bankruptcy Judge

23